# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 28
The People &c.,
        Respondent,
    v.
Spence Silburn,
        Appellant.

Alexis A. Ascher, for appellant.
Howard B. Goodman, for respondent.

DiFIORE, Chief Judge:

We are called upon to decide two issues in this appeal. Defendant contends that he was denied his right of self-representation when the trial court denied his request to proceed pro se with "standby counsel." Defendant further argues that he was deprived of a fair trial

- 1 -

when the trial court precluded his proffered psychiatric testimony for failure to serve notice on the People pursuant to CPL 250.10. We agree with the courts below that neither contention is consistent with the controlling law. Therefore, we now affirm.

I.

In August of 2011, the police lawfully stopped defendant while he was driving a stolen car with a license that had been suspended and revoked. Defendant was searched and a loaded .45 caliber handgun was found in his jacket pocket. After the police seized the gun, defendant spontaneously declared that it was a good thing the officer had his gun drawn as quickly as he did because defendant would have shot him. Later at the precinct, defendant waived his Miranda rights and admitted to stealing the car at gunpoint. Toward the end of the 15-minute interview, defendant became agitated. He was later taken by police to a hospital for a psychiatric evaluation. Defendant was thereafter indicted for criminal possession of a weapon in the second degree, aggravated unlicensed operation of a motor vehicle in the third degree, and related counts. In August 2012, two psychiatrists examined defendant pursuant to CPL article 730, and a competency hearing was held. At the hearing, defense counsel questioned one of the examining psychiatrists about defendant's history of mental illness, and discussed the symptoms of schizophrenia that defendant exhibited. Defendant was found competent to stand trial.

A year later in 2013, and two weeks before trial, defendant requested to "proceed as pro se." The trial court inquired if defendant wanted to represent himself, to which defendant replied that he did "[n]ot just [want to] represent myself, but having limitation with my counsel." The court plainly informed defendant that "[y]ou either have a lawyer,

or you don't have a lawyer. . . . You choose to represent yourself, you sit there by yourself. You want to have a lawyer, you have a lawyer." The court then asked, "All right?" The record does not reflect defendant's response, if any, and defense counsel continued to represent defendant at trial.

Defendant raised the issue again after voir dire, when defense counsel informed the court that defendant had wanted to question the prospective jurors and sought to question the witnesses, in addition to the questioning done by his attorney. The court again told defendant that "you have a right to represent yourself without an attorney. Or you have the right to have an attorney." Defendant maintained that the Sixth Amendment gave him the right to the assistance of counsel and he wanted "assistance" from his counsel – for his attorney to "act[] like an aide." The court told defendant he could not have dual representation. Although defendant replied, "I was asking if I could go pro se with standby counsel," he again clarified that he wanted the opportunity to ask any questions that his attorney failed to ask. The court denied the request.

During trial, despite having never served a CPL 250.10 notice, defense counsel sought to introduce the testimony of the psychiatrist who evaluated defendant, at the behest of the police, the day he was arrested. Counsel informed the court that the psychiatrist diagnosed defendant as "bipolar, with psychotic features" and, counsel argued, this diagnosis rendered defendant mentally incapable of voluntarily waiving his Miranda rights. After hearing from the psychiatrist outside the presence of the jury, the court precluded the evidence, concluding that i) the proffered testimony was of slight probative value because

the psychiatrist had no recollection of examining defendant; ii) the evidence was insignificant; and iii) the failure to serve a CPL 250.10 notice prejudiced the People.

The jury convicted defendant of criminal possession of a weapon in the second degree, aggravated unlicensed operation of a motor vehicle in the third degree, and a related offense. The Appellate Division affirmed, determining that defendant's request to proceed pro se was equivocal since defendant asked only to proceed pro se with standby counsel (145 AD3d 799, 799-800 [2d Dept 2016]). Thus, the Court concluded that that defendant did not make a "knowing, voluntary, and intelligent waiver of the right to counsel" (id. at 799 [internal quotation marks and citation omitted]). The Court further held that the trial court did not err in precluding defendant's proffered psychiatric evidence because defendant did not provide timely notice of his intent to present the evidence under CPL 250.10 (id. at 801).

A Judge of this Court granted defendant leave to appeal (29 NY3d 952 [2017]).

II.

Defendant argues that the trial court violated his constitutional right to self-representation when it denied his requests to proceed pro se without making any further inquiry. He maintains that the request was unequivocal despite the fact that it was conditioned on his request to proceed with "standby counsel." In response, the People assert that the trial court did not err in denying defendant's request to proceed pro se, since defendant, as evidenced in the colloquy conducted by the court, never made an unequivocal request to represent himself alone, without counsel.

Under the New York and Federal Constitutions, a defendant has the right to proceed without counsel and to represent him or herself at trial, and the State may not force counsel upon a defendant (see NY Const, art I, § 6; Faretta v California, 422 US 806, 836 [1975]). In People v McIntyre, we set forth a three-prong test, long used to address a defendant's right to self-representation:

> "A defendant in a criminal case may invoke the right to defend pro se provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues"

(36 NY2d 10, 17 [1974]). If a defendant asserts a timely and unequivocal request to proceed pro se, then the trial court must "conduct a 'searching inquiry' to ensure that the defendant's waiver [of the right to counsel] is knowing, intelligent, and voluntary" (Matter of Kathleen K. [Steven K.], 17 NY3d 380, 385 [2011]; see also People v White, 56 NY2d 110, 117 [1982]).

In clarifying what "unequivocally" means, we have explained that the pro se request must be "clearly and unconditionally presented to the trial court," so that "convicted defendants may not pervert the system by subsequently claiming a denial of their pro se right" (McIntyre, 36 NY2d at 17). We determined that a defendant's request to proceed pro se was not unequivocal, where "[a]t no time did [defendant] demonstrate an actual fixed intention and desire to proceed without professional assistance in his defense to the charges against him" (People v Payton, 45 NY2d 300, 314 [1978], revd on other grounds, 445 US 573 [1980]). We have further concluded that the application to proceed pro se

"must reflect a purposeful decision to relinquish the benefit of counsel and proceed singularly" (Matter of Kathleen K., 17 NY3d at 386).[1]

In People v Mirenda (57 NY2d 261, 265 [1982]), we rejected the argument that a defendant has a constitutional right to the assistance of standby counsel while conducting a pro se defense, establishing that "[n]o such right is guaranteed by either the State or Federal Constitution." Nearly 20 years after Mirenda, we reaffirmed that, "[w]hile the Sixth Amendment and the State Constitution afford a defendant the right to counsel or to self-representation, they do not guarantee a right to both. These are separate rights depicted on the opposite sides of the same constitutional coin. To choose one obviously means to forego the other" (People v Rodriguez, 95 NY2d 497, 501 [2000] [internal quotation marks, brackets, and citation omitted]). In doing so, we held that "[b]ecause a defendant has no constitutional right to hybrid representation, the decision to allow such representation lies within the sound discretion of the trial court" (id. at 502). "An accused awaiting trial therefore has only two choices regarding legal representation – proceed with counsel or waive the protection of the Sixth Amendment and proceed pro se" (People v Henriquez, 3 NY3d 210, 215 [2004]). Here, the record supports the trial court's conclusion that defendant's request to proceed pro se was equivocal, and was conditioned on the assistance

---

[1] In the context of a defendant's constitutional right to counsel, we stated that a defendant asking the police "should I speak to a lawyer" did not amount to an unequivocal request for an attorney, such that his right to counsel did not attach and the statement he made to the police was not in violation of the federal and state constitutions (see People v Hicks, 69 NY2d 969, 970 [1987]; see also People v Mitchell, 2 NY3d 272, 276 [2004]; People v Glover, 87 NY2d 838, 839 [1995]; People v Roe, 73 NY2d 1004, 1006 [1989]; People v Fridman, 71 NY2d 845, 846 [1988]).

of counsel. Accordingly, the trial court did not err in failing to conduct a further "searching" inquiry in response to defendant's request.

Indeed, at the outset of the second request, defense counsel informed the court that defendant wanted to question prospective jurors and witnesses in addition to the questioning done by counsel. The court again explained to defendant that the court did not allow "standby counsel," and that defendant had either the right to represent himself without counsel or the right to have an attorney. Defendant responded that the Sixth Amendment gave him the right to the aid and assistance of counsel. Defendant's invocation of the Sixth Amendment during the colloquy and his evident desire to have counsel question the prospective jurors and witnesses along with him is neither a waiver of the right to counsel nor the substance of an unequivocal request to represent himself. The United States Supreme Court "explicit[ly]" stated that the appointment of standby counsel is "to relieve the [trial] judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals" (McKaskle v Wiggins, 465 US 168, 184 [1984]). It is not to provide a defendant a cocounsel in front of the jury. Here, while defendant used the words "standby counsel," the substance of his request – that he be permitted to ask questions in addition to those asked by his attorney – demonstrated that he was seeking dual representation.[2] Whether his request is labeled as

---

[2] The fast food analogy offered in Judge Wilson's dissent, joined by Judge Rivera, is both inapt and inappropriate. Whatever its intended effect, the use of such a rhetorical device trivializes the constitutional rights of defendant implicated on this appeal. In any event,

one of "dual representation," "hybrid representation," or "pro se with standby counsel," the record supports the conclusion that what this defendant wanted was his right to the assistance of counsel at trial – i.e., he was not seeking to waive his constitutional right to counsel – and he never requested to proceed without counsel.[3]  Thus, defendant did not satisfy the first prong of McIntyre that he unequivocally request to represent himself and, therefore, the trial court did not err in failing to conduct a further inquiry.[4]

_____

the purported analogy presented by the dissent is completely defeated by the factual record.

[3] In interpreting the federal right to self-representation under Faretta, the Second Circuit has pointedly explained,

> "[t]he purpose of requiring that a criminal defendant make an 'unequivocal' request to waive counsel is twofold.  First, unless the request is unambiguous and unequivocal, a convicted defendant could have a colorable Sixth Amendment appeal regardless of how the trial judge rules:  if his request is denied, he will assert the denial of his right to self-representation; if it is granted, he will assert the denial of his right to counsel.  Second, the requirement of an unambiguous and unequivocal request inhibits any 'deliberate plot to manipulate the court by alternatively requesting, then waiving counsel'"

(Williams v Bartlett, 44 F3d 95, 100-101 [2d Cir 1994] [internal citations omitted]).

[4] The cases relied on by the Wilson dissent (People v Crampe, 17 NY3d 469 [2011] and People v Providence, 2 NY3d 579 [2004]) are inapposite as they both address the sufficiency of the colloquy the trial court has with a defendant who unequivocally requests to proceed pro se. The records in these cases demonstrate that in each case the defendant unequivocally, unconditionally and repeatedly requested to represent himself, which then triggered the second prong under McIntyre, requiring the court to inquire whether the defendant knowingly, voluntarily, and intelligently waived counsel.  Here, by contrast, we are confronted with the first prong of McIntyre: whether the defendant unequivocally requested to represent himself without counsel.  Defendant does not satisfy this initial prong on the record before us.

Defendant urges that a court presented with a request to proceed pro se with "standby counsel" should make an in-depth inquiry whether defendant still desires to represent himself, once defendant is informed that dual representation will not be provided. We hold that further colloquy by the trial court is not constitutionally required when a defendant remains equivocal, despite having been informed by the court on more than one occasion that his right to self-representation includes a waiver of the right to an attorney, as here. When a defendant asks to proceed "pro se with standby counsel" and the trial court explains the scope of the right to proceed pro se, and specifically denies the defendant's request for hybrid representation, the better practice would be to again ask the defendant if he or she still wants to proceed without counsel. Nevertheless, "[w]hile such inquiries may be the better practice, we will not compel courts to engage in any particular catechism" before denying an equivocal request to proceed pro se because "[n]either our Constitution nor our precedent requires it" (Rodriguez, 95 NY2d at 502). As it is the trial court's function to "ensur[e] the orderly administration of the proceedings" (id., citing Mirenda, 57 NY2d at 266), it remains within the trial court's discretion to conduct any further colloquy where a defendant does not unequivocally request to proceed without counsel, but instead prefers to proceed with the assistance of counsel.[5]

---

[5] The Wilson dissent's alternative conclusion – the trial court abused its discretion in denying defendant's request for hybrid representation – is one that is not urged by defendant on this appeal nor was it raised below (see Wilson dissenting op. at 7-9; see also Rivera dissenting op. at 4 [acknowledging the issue is not before us]).

III.

CPL 250.10 (2) prohibits a defendant from introducing psychiatric evidence as to his or her mental capabilities at trial "unless the defendant serves upon the people and files with the court a written notice of his intention to present psychiatric evidence."  "Such notice must be served and filed before trial and not more than thirty days after entry of the plea of not guilty to the indictment" (CPL 250.10 [2]).  The term "psychiatric evidence" is defined as "[e]vidence of mental disease or defect to be offered by the defendant in connection with" either (a) "the affirmative defense of lack of criminal responsibility by reason of mental disease or defect," (b) the "affirmative defense of extreme emotional disturbance," or (c) "any other defense not specified in the preceding paragraphs" (CPL 250.10 [1]).  We previously held CPL 250.10 (1) (c) is a "catch-all provision that contemplates a defendant's use of psychiatric evidence in connection with 'any other defense'" (People v Almonor, 93 NY2d 571, 578 [1999]).  Defendant argues that the trial court erred in precluding his unnoticed psychiatric evidence because a challenge to the voluntariness of a confession pursuant to CPL 710.70 is not a "defense" and is thus outside the ambit of CPL 250.10 (1) (c).  We disagree.

Defendant narrowly construes the phrase "any other defense" in CPL 250.10 (1) (c) to be limited to psychiatric evidence offered in support of a complete defense to an element of the crime, such as mens rea; he does not interpret the statute to include a defense strategy to offer evidence that allows the jury to negate the prosecution's evidence of guilt.  As explained below, this argument ignores the legislative intent, our precedent espousing the very purpose of notice, and the fact that, if a defendant's confession was the primary

evidence of guilt and the defendant raises the issue of voluntariness at trial, then voluntariness could be a complete defense to the crime (see People v Miller, 28 NY3d 355, 359 [2016]).[6]  Notably, our Court has previously labeled a defendant's challenge to the voluntariness of his statement pursuant to CPL 710.70 a "defense" (see People v Combest, 4 NY3d 341, 347-348 [2005]).[7]  Moreover, lower courts, have found that the CPL 250.10 notice requirement applies when a defendant seeks to use psychiatric evidence at trial to challenge the voluntariness of his or her statements (see People v Brown, 4 AD3d 886, 888 [4th Dept 2004]; People v Yates, 290 AD2d 888, 890 [3d Dept 2002]; People v Matthews, 57 Misc 3d 1210[A], 2017 NY Slip Op 51371[U], *6 [Sup Ct, NY County 2017]; People v Oliver, 45 Misc 3d 765, 773-774 [Sup Ct, Kings County 2014]; People v Prater, 172 Misc 2d 831, 833 [Sup Ct, Kings County 1997]; People v Morello, 142 Misc 2d 142, 143-144 [Westchester County Ct 1988]).

---

[6] Contrary to the musings of the dissent, cases where confessions constitute the primary evidence of guilt are not rare and since 1881, the legislature has included statutory safeguards requiring corroboration of a defendant's confession (see Wilson dissenting op. at 13 n 2; see also People v Lipsky, 57 NY2d 560, 570 [1982]; CPL 60.50).

[7] In the context of an ineffective assistance of counsel claim, we treated a defendant's challenge to the voluntariness of his confession as a "defense" (see People v Oliveras, 21 NY3d 339, 347 [2013]). There, the defendant moved to vacate his conviction for murder in the second degree, arguing his trial counsel was ineffective for "fail[ing] to provide timely notice pursuant to CPL 250.10, to present evidence of defendant's psychiatric history, to obtain defendant's psychiatric records, [and] to consult an expert to explain the relationship between defendant's psychiatric history and the voluntariness and reliability of his statements" (id. at 344).  We noted that "other than defendant's statements to the police, no other evidence directly connected defendant with the murder" (id. at 343), and therefore, we concluded that defense counsel was ineffective for failing to "secure and review" defendant's psychiatric records because "trial counsel's inability to undermine the voluntariness of [defendant's inculpatory] statements was crucial" (id. at 348).

A.

In interpreting a statute, "our primary consideration is to discern and give effect to the Legislature's intention" (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 120 [2012]).  Evidence of legislative intent is "first sought in the words the Legislature has used.  But we may not stop there; the spirit and purpose of the act and the objects to be accomplished must also be considered" (People v White, 73 NY2d 468, 473-474 [1989] [internal citations omitted]; see also Matisoff v Dobi, 90 NY2d 127, 133 [1997] ["where a statute's language is capable of various constructions, the 'obvious spirit and intent' of a statute necessarily informs the meaning and import to be accorded that language"]).  Since the phrase "any other defense" in CPL 250.10 (1) (c) is susceptible to multiple interpretations, the phrase must be construed in light of the legislature's purpose in enacting it (see Kimmel v State of New York, 29 NY3d 386, 393 [2017] ["We have repeatedly held that 'the word "any" means "all" or "every" and imports no limitation'"] [citation omitted]).  An inquiry into the purpose of the statute "requires examination of the statutory context of the provision as well as its legislative history" (Matter of Sutka v Conners, 73 NY2d 395, 403 [1989]).

The precursor to CPL 250.10 was the former Code of Criminal Procedure § 336, which required defendants to serve and file notice only if they intended to rely on the insanity defense (see Code Crim Pro § 336).[8]  CPL 250.10 was later enacted and

_____

[8] The purpose behind the notice requirement in former Code of Criminal Procedure § 336 was to ensure that the People were not unfairly surprised at trial.  According to the Legislative Memoranda accompanying the former provision,

subsequently amended in 1980, and the notice requirement remained limited to the insanity

defense (see L 1980, ch 548, § 7).  In 1982, however, the legislature codified this Court's

decision in People v Segal (54 NY2d 58 [1981]) by expanding the notice requirement to

include the affirmative defense of extreme emotional disturbance in subdivision (b) and

the catchall "any other defense" in subdivision (c) (see L 1982, ch 558, § 9; People v

Cruickshank, 105 AD2d 325, 329 [3d Dept 1985], affd sub nom. People v Dawn Maria C.,

67 NY2d 625 [1986]; see also Joseph W. Bellacosa, Practice Commentary, McKinney's

Cons Laws of NY, Book 11A, CPL 250.10 at 425).  In 1984, subdivision (a) of the statute

was amended to reflect the change of the insanity defense to an affirmative defense (see L

1984, Ch 668, §§ 6, 7).  As we stated, "CPL 250.10 and its notice provisions initially

contemplated only an insanity defense (now an affirmative defense).  Recognizing,

however, that psychiatric evidence could properly be introduced for mitigatory purposes,

---

> "At present, there is no provision in the Code requiring notice
> that the defendant intends to present evidence of mental
> disease or defect.  In fact, he may offer such evidence under a
> plea of not guilty without the specification of insanity and, if
> the defense is sustained, the jury may acquit. This, obviously,
> may place the People at an unfair disadvantage in that,
> surprised by the sudden interposition of this collateral
> defense, they may have insufficient opportunity to obtain the
> psychiatric and other evidence necessary to refute it and to
> establish, as they must, the defendant's sanity beyond a
> reasonable doubt.  The bill would rectify this situation"

(Mem of Temp Commn on Rev of the Penal Law and Crim Code following L 1963, ch
595, reprinted in 1963 McKinney's Session Laws of NY at 1986; see also People v Berk,
88 NY2d 257, 263-264 [1996]).

the Legislature broadened the definition of psychiatric evidence to include the two other

categories" (Almonor, 93 NY2d at 578).

Indeed, as evidenced by the statute's Bill Jacket, the purpose of the 1982

amendments was to "provide for a simplified and expanded exchange of [evidentiary]

information between the prosecution and defense" before trial (Governor's Mem

Approving L 1982, ch 558, 1982 Legis Ann at 186). This process would "markedly

increase[]" the "efficiency and fairness of criminal proceedings" and "improve[]

evidentiary discovery practices" with the goal of reducing "judicial delay" (id.). As we

explained,

> "The Legislature enacted CPL 250.10 to promote procedural
> fairness and orderliness. The statute is designed to create a
> format by which psychiatric evidence may be prepared and
> presented manageably and efficiently, eliminating the element
> of surprise. With that in mind the Legislature has formulated
> a procedure that depends upon proper notification, adversarial
> examination, and preclusion when appropriate"

(Almonor, 93 NY2d at 577-578). That is, the very purpose behind the statute was to

eliminate surprise and promote fairness at trial by allowing the People, upon defendant's

timely notice, the opportunity pretrial to obtain otherwise privileged psychiatric evidence

to rebut defendant's affirmative use of the evidence at trial. Therefore, allowing a

defendant to use unnoticed psychiatric evidence without good cause shown would be

contrary to the "legislative intent . . . to ensure the prosecution sufficient opportunity to

obtain the psychiatric and other evidence necessary to refute the proffered defense of

mental infirmity" (People v Berk, 88 NY2d 257, 264 [1996] [internal quotation marks,

citation, and emphasis omitted]).

The legislature also intended to avoid the delay that would result from the surprise presentation of such evidence at trial, which, in fairness, would necessitate an adjournment so that the People could have the defendant examined by their own mental health expert and obtain the relevant medical records (see CPL 250.10 [3]). These principles apply equally whether the psychiatric evidence is offered in connection with a mens rea defense, or in connection with the defendant's challenge to the voluntariness of his or her statements to the police. It is the very nature of psychiatric evidence that mandates the requirement of notice, if the defendant intends to rely on the evidence to negate the People's evidence of guilt. Thus, it is entirely consistent with the purpose of the statute to construe the phrase "any other defense" as used in CPL 250.10 (1) (c), to apply to defendant's offer of psychiatric evidence in support of his contention that due to his mental illness, his statements, which are direct evidence of guilt, must be rejected by the jury (see e.g. People v Rumble, 45 NY2d 879, 880-881 [1978]).

Moreover, our prior case law demonstrates that we have repeatedly construed the statute broadly in order to carry out the legislative intent to ensure the fairness of the trial. For example, in Berk, we expanded the parameters of what constitutes "psychiatric evidence" under CPL 250.10, by holding that the plain language of the statute requires notice of an intention to offer psychiatric evidence irrespective of whether the expert actually examined the defendant (Berk, 88 NY2d at 263). In People v Pitts, the companion case to Almonor, the defendant timely served notice of his intention to offer psychiatric evidence relating to his acute stress disorder in connection with his insanity affirmative defense, but because the defendant did not timely notify the People that the same

psychiatric evidence surrounding the defendant's stress disorder was also going to be used to support a defense based on lack of assaultive intent, the court precluded the evidence (93 NY2d at 581). In other words, although the People were aware of the "general nature of the alleged psychiatric malady" the defendant sought to introduce, they had no notice of "its relationship to a particular, proffered defense" and thus they were "not [] able to conduct a meaningful psychiatric examination of [their] own" (id.). We therefore held preclusion of the evidence was appropriate. In People v Diaz (15 NY3d 40 [2010]), we applied the notice requirement to mental health testimony provided by lay witnesses. We stated, "for purposes of the notice provision, psychiatric evidence, which we have broadly construed to encompass 'any' mental health evidence offered by a defendant, includes lay testimony" (id. at 47; see also Segal, 54 NY2d at 66-67 [expanding the statute, then limited to the insanity defense, to apply to a defense based on mental defect that negated intent]; Matter of Lee v County Ct. of Erie County, 27 NY2d 432, 441-442 [1971] [affording the prosecution the right to have its own expert examine the defendant who seeks to call a psychiatrist at trial]).[9]

_____

[9] Despite the dissent's recognition that "a court cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the Legislature did not see fit to enact" (Matter of Chemical Specialties Mfrs. Assn. v Jorling, 85 NY2d 382, 394 [1995] [quotation marks and citation omitted]; see Wilson dissenting op. at 19), this is precisely what the dissent does when it concludes that psychiatric evidence offered by defendant in connection with 'any other defense' under subdivision (c) "can only be meant to include evidence that would either raise a defense by creating reasonable doubt about the mens rea element of the crime or establish an affirmative defense" (Wilson dissenting op. at 12). Where, as here, the legislature, in contrast to subdivisions (a) and (b), omitted the word "affirmative" from subdivision (c), it is not appropriate for us to insert it. It was plainly the intent of the legislature to expand subdivision (c) and require defendants to provide notice to the People when they seek to introduce psychiatric

The dissent asserts, among other things, that our interpretation of the statutory term "any other defense" in CPL 250.10 to mean what it plainly says – any other defense – somehow impinges on a defendant's "constitutional right to present witnesses" and that CPL 250.10 assists the People in proving "what they must" (see Wilson dissenting op. at 9, 15). However, courts have long rejected the notion that a statutory pretrial notice requirement somehow shifts the People's burden of proof or is a constitutional violation of the right to present a defense (see People v Rodriguez, 3 NY3d 462, 468-469 [2004]; see also Leland v Oregon, 343 US 790, 799-800 [1952]; People v Kohl, 72 NY2d 191, 193-194 [1988]). The statute simply provides the People pretrial access to generally unavailable evidence for the limited purpose of rebuttal, and requires a defendant to open the door to the People's rebuttal by affirmatively presenting the psychiatric defense (see Buchanan v Kentucky, 483 US 402, 422-423 [1987]). As the United States Supreme Court has explained, "if a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation" (id. at 422).[10]

---

evidence in connection with "any other defense" (CPL 250.10 [1] [c]). The dissent's narrow interpretation of this catch-all phrase that is designed to be inclusive defeats the principle of fundamental fairness, which was the impetus for the statute.

[10] The dissent's discussion as to CPL 250.10's applicability to suppression hearings (see Wilson dissenting op. at 17) involves an issue not before us as the argument was never raised in the trial court. This discussion also confuses the difference between the admissibility of a statement, a decision that may only be determined by the court, with the ability of the jury to determine the voluntariness of the statement at trial (see People v Hamlin, 71 NY2d 750, 761 [1988]; CPL 710.70). It further ignores that the CPL demands defendants provide pretrial notice of the legal grounds on which the suppression motion is made (CPL 710.60 [3] [a]). And lastly, timely notice under CPL 250.10 (2), i.e., "not more than thirty days after entry of the plea of not guilty to the indictment[,]" of a defense of mental illness as to the voluntariness of a statement, would provide the

As concluded by the courts below, the applicability of CPL 250.10 to the instant case is wholly consistent with our longstanding interpretation that there can be no surprise psychiatric evidence and that pretrial notice is necessary based upon "principles of fairness and the integrity of the trial process" (Segal, 54 NY2d at 65). Thus, in order not to defeat the purpose of the statute, we construe the phrase "any other defense," as used in CPL 250.10 (1) (c), to apply to psychiatric evidence offered by defendant in support of his contention that his statements to police were involuntary because his diagnosis of bipolar disorder rendered him incapable of understanding and waiving Miranda warnings.

B.

Defendant next argues that the record belies the trial court's finding that preclusion of the evidence was warranted on the ground that the surprise evidence prejudiced the People. In support, he claims the record shows that the People were aware early on that defendant had a mental illness. However, there are two critical flaws in this argument. First, knowing that defendant had a mental illness did not put the prosecutor on notice that defendant intended to introduce evidence at trial that his diagnosis rendered him incapable of giving a voluntary statement to the police. To be sure, defendant never even raised this voluntariness argument at his Huntley hearing. Second, defendant's contention ignores the law that his own medical records are privileged until he waives the privilege (see Matter of Lee, 27 NY2d at 441). When defense counsel told the court that he had not received any hospital records from the prosecution, the court shrewdly observed that defendant's

_____

People ample opportunity to obtain rebuttal evidence before the pretrial suppression hearing.

medical records were privileged and that the prosecution had no right to look at them. This is one of the primary reasons for CPL 250.10's existence. The People cannot have a mental health expert of their choosing examine a defendant nor can they obtain his or her medical records due to the privileged and confidential nature of the evidence, unless the defendant wants to affirmatively use a mental condition as evidence at trial, thereby waiving Fifth Amendment rights and statutory privileges (see id.; see also Segal, 54 NY2d at 64-65; CPLR 4507).

Finally, defendant contends that the court's refusal to excuse the lack of notice was an abuse of discretion since under the statute, the court may accept late notice "[i]n the interest of justice and for good cause shown" (CPL 250.10 [2]). The record flatly refutes defense counsel's claim that good cause was shown for his untimeliness. Defense counsel was fully aware that defendant had a longstanding history of mental health problems, including diagnoses of bipolar disorder and schizophrenia, as evidenced by the record of the CPL article 730 hearing, which took place a year before the trial. Furthermore, on the second day of trial, defense counsel informed the court that he had been trying unsuccessfully to contact the psychiatrist witness "for weeks," contradicting his current assertion that he did not plan to challenge the voluntariness of defendant's statements to the police until hearing the officer's trial testimony.

The trial court, after examining the psychiatrist outside the presence of the jury, precluded the evidence – a police form containing a mere diagnosis – as speculative on the issue of voluntariness and because the People had no opportunity to examine defendant or obtain rebuttal evidence. That the psychiatrist testified that he had no recollection of the

examination of defendant is also part of this equation. So too is the fact that there is no indication in the record that a diagnosis of bipolar disorder renders a defendant incapable of knowingly and voluntarily waiving his <u>Miranda</u> rights. Thus, the court reasonably decided to preclude the evidence at trial. Defendant's claim that the trial court abused its discretion in doing so is meritless.[11]

CPL 250.10 was designed to preserve the integrity of the trial process predicated on a principle of fairness. Accordingly, the trial court neither erred nor abused its discretion in precluding defendant's unnoticed psychiatric evidence as there was no justification for the surprise on this record, and to allow it would contradict the statutory purpose behind the notice requirement.

Accordingly, the order of the Appellate Division should be affirmed.

---

[11] Even if the psychiatric evidence at issue here had been erroneously excluded, its preclusion would have been harmless beyond a reasonable doubt as there was overwhelming evidence of guilt and no significant probability that preclusion impacted the verdict (see <u>People v Crimmins</u>, 36 NY2d 230, 241–242 [1975]). Officers recovered a loaded weapon on defendant's person after lawfully pulling him over in a car that he was driving without a valid license. Further, defendant spontaneously admitted his possession of the loaded gun when he said he would have shot the officer had he not been apprehended so quickly.

People v Spence Silburn

No. 28

WILSON, J. (dissenting):

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations" (Chambers v Mississippi, 410 US 284, 294 [1973]). Included in that right is the "chance to present his case in his own way" by calling witnesses and by entrusting their examination to either his counsel or his own faculties (McKaskle v Wiggins, 465 US 168, 177 [1984]). The majority denies Mr. Silburn his chance in contravention of our precedents; I would reverse to grant him a new trial on that ground. I disagree with the majority's interpretation of CPL 250.10, but agree the error here was harmless, and therefore would not reverse on that ground.

I.

"[T]he right to self-representation embodies one of the most cherished ideals of our culture; the right of an individual to determine his own destiny" (People v McIntyre, 36 NY2d 10, 14 [1974]).  Unless the accused has agreed to representation by counsel, "the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense (Faretta v California, 422 U.S. 806, 822 [1975] [emphasis in original]).  Of course, the federal and New York constitutions also guarantee that the accused will "have the assistance of counsel for his defense" (US Const., Amendment VI; see also NY Const, art. I § 6).  Asserting the right to self-representation requires relinquishment of representation by competent counsel.  Few defendants will possess the legal training and experience of counsel.  Therefore, when a defendant makes a timely and unequivocal request to proceed pro se, we require trial courts to ascertain whether there has been a knowing and intelligent waiver of the right to counsel and whether the defendant's conduct would prevent a fair and orderly trial (McIntyre, 36 NY2d at 17).  Here, Mr. Silburn timely and unequivocally asserted his right to represent himself, but the trial court defaulted in its duty to inquire.  Accordingly, I would reverse Mr. Silburn's conviction and remand the case for a new trial.

The facts are as presented in the majority opinion.  Two weeks before trial, Mr. Silburn requested to proceed pro se.

THE DEFENDANT: Your Honor, excuse me, your Honor.

THE COURT: Yes?

THE DEFENDANT: I would like to know if I could proceed as pro se.

MR. CHAIKEN [DEFENSE COUNSEL]: Pro se.

THE COURT: In other words, you want to represent yourself?

THE DEFENDANT: Not just that represent myself, but having limitation with my counsel—

THE COURT: No, I don't do that. You either have a lawyer, or you don't have a lawyer. I don't have legal advisors. You choose to represent yourself, you sit there by yourself. You want to have a lawyer, you have a lawyer.

All Right?

August 7 for conference.

August 13 for trial.

As that transcript makes clear, Mr. Silburn began by stating his unequivocal request to proceed pro se. He followed it with what any reader of <u>McIntyre</u>, "the foundation stone of our self-representation jurisprudence", and its progeny would have considered a second unequivocal expression of that desire (<u>People v Crampe</u>, 17 NY3d469, 481 [2011]); <u>see</u> <u>McIntyre</u>, 36 NY2d at 13 [treating Mr. McIntyre's request that he "try the case himself and that counsel be permitted to sit with him as an adviser" as unequivocal]; <u>see</u> <u>also</u> <u>Crampe</u>, 17 NY3d at 477 [treating Mr. Wingate's request that he proceed pro se with "an attorney to assist" as unequivocal]; <u>People v Providence</u>, 2 NY3d 579, 581-582 [2004] [treating Mr. Providence's request that he "proceed pro se, with assigned counsel placed in a 'standby'

role" as unequivocal]).  The majority offers no explanation why Mr. Silburn should be treated differently from those who came before.

Nothing in Mr. Silburn's two statements—his only statements before the court summarily concluded the hearing—supports the majority's conclusion that his request to proceed pro se was conditioned on, rather than merely eventually combined with, his request for standby counsel.  Consider the following illustration:

CUSTOMER: Sir, excuse me, sir.

CASHIER: Yes?

CUSTOMER: I would like to order a Big Burger.

CASHIER: In other words, you want two all-beef patties, special sauce, lettuce, cheese, pickles, onions on a sesame seed bun?

CUSTOMER: Not just that, but I would also like fries with it—

CASHIER: No, we don't do that. You either have a Big Burger, or you have fries.

We don't serve combinations.  You choose a Big Burger, you sit there without fries.  You want fries, you have fries only.

All Right?

Next customer.

Would the cashier be justified in assuming the customer no longer desired a Big Burger and delivering an order of fries only?  Should the customer go hungry for using a correlative conjunction?

There are two important differences that make Mr. Silburn's situation grave, when compared to a fast-food fiasco.  First, the court is tasked with determining which of two fundamental constitutional rights Mr. Silburn wishes to choose, if he must forgo one.  That determination demands far more concern and precision than a simple lunch order.[1]  Ironically here, although a "lack of knowledge of legal principles" and "unfamiliarity with courtroom procedures" cannot bar defendants from exercising their right to self-representation, the majority's decision uses those exact shortcomings to prevent Mr. Silburn from requesting to exercise his right (People v Davis, 49 NY2d 114, 120 [1979]).  Second, the customer and cashier are on even footing, whereas Mr. Silburn is far less versed in law than the court.  (Indeed, customers can take their money to the burger joint next door; Mr. Silburn is rooted to his spot.)  The majority frees courts from engaging in "any particular catechism"—at the price of imposing a precise one on defendants (majority op. at 7, quoting People v Rodriguez, 95 NY2d 497, 502 [2000]).  Yet who in that relationship has the pulpit?

Moreover, even assuming Mr. Silburn could be understood to have conditioned his request for self-representation on his request for the appointment of standby counsel, trial courts presented with those two requests should, if they deny the second, be required to ask defendants whether they prefer to reassert or recant the first.  Mr. Silburn did not, as the

---

[1] The majority's complaint that my illustration trivializes Mr. Silburn's constitutional rights underscores their error: a cashier would not treat a customer's request for a burger and fries this way; should a court treat Mr. Silburn's request for his constitutional rights with less or greater regard (majority op. at 7 n 4)?  To "trivialize" something is to ascribe little worth or importance to it; who here has done so?

majority would have it, "remain equivocal despite having been informed of the scope of his right" (majority op. at 8); he remained silent. Given the court's decision to abruptly conclude the hearing after clarifying its rules, we cannot interpret that silence as consent to representation by counsel. Only by asking follow-up questions that ascertain defendants' true intentions can trial courts avoid Sixth Amendment violations and foreclose the majority's concern that wily defendants will "pervert the system" by spouting ambiguities in a "deliberate plot to manipulate the court" (majority op. at 5, 7 n 3).

The injustice of the majority's approach is compounded by the fact that defendants reasonably expect their requests for standby counsel to be granted. It is unfair to punish a defendant for requesting what all assume—on the basis of our prior case law, their prior trials, the attestations of fellow inmates, the ABA's recommendations, or a colorable reading of the Sixth Amendment (see McIntyre, 36 NY2d at 13; Crampe, 17 NY3d at 475 [defendant "had previously represented himself with a lawyer's assistance"]; Erica J. Hashimoto, Defending the Right of Self-Representation: An Empirical Look at the Pro Se Felony Defendant, 85 NC L Rev 423, 485 ["In the overwhelming majority of cases . . . the defendant was afforded advisory counsel"]; ABA Standards for Criminal Justice § 6-3.6–6-3.7; People v Mirenda, 57 NY2d 261, 267-269 [1982] [Meyer, J., dissenting])—will be provided in the first place. "To allow the uninformed to unwittingly waive their right of self-representation merely by requesting standby counsel 'is to imprison a man in his privileges and call it the Constitution'" (People v Dennany, 445 Mich. 412, 456 [1994] [Cavanaugh, CJ, concurring in part and dissenting in part], quoting Adams v United States

ex rel. McCann, 317 US 269, 280 [1942]; see also Faretta, 422 US at 822-823 ["There is

something specially repugnant to justice in using rules of practice in such a manner as to

debar a prisoner from defending himself, especially when the professed object of the rules

so used is to provide for his defense" (citations and internal quotation marks omitted)]).

Here, although the trial court was not required to satisfy Mr. Silburn's request for standby

counsel (Mirenda, 57 NY2d at 265), it erred in immediately curtailing any further

conversation and thereby preventing the determination of whether Mr. Silburn wished to

proceed pro se without any assistance of counsel.

The majority does not engage with Mr. Silburn's first request to proceed pro se.

Instead, it rests its analysis on his second request, made two weeks after the first (majority

op. at 7). Neither the majority nor the People contend that the court's failure to conduct a

McIntyre inquiry upon Mr. Silburn's initial request was cured by his subsequent request.

Nor could they plausibly argue that the second colloquy—which was, like the first,

summarily curtailed by the court's abruptly adjourning proceedings for the day—supports

the proposition that Mr. Silburn's initial request was conditioned on his receiving standby

counsel. In that second colloquy, the court attempted to describe Mr. Silburn's earlier

position, saying "[Y]ou said you didn't want to represent yourself." Mr. Silburn

immediately denied it: "I never said that." The transcript plainly shows that Mr. Silburn,

not the court, was correct.

In any event, Supreme Court also erred in refusing to contemplate even the

possibility of assigning standby counsel. Whether to permit standby counsel is "a subject

for the discretion of the Trial Judge" (id. at 266; see majority op. at 6).  The U.S. Supreme

Court has explained that "the term 'discretion' implies the absence of a hard-and-fast rule.

The establishment of a clearly defined rule of action would be the end of discretion" (The

Styria v Morgan, 186 US 1, 9 [1902]).  "When invoked as a guide to judicial action, it means

a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with

regard to what is right and equitable under the circumstances" (Langnes v Green, 282 US

531, 541 [1931]).  Our own precedents are equally clear that exercises of discretion must

be rooted in "fact or circumstance" (In re Superintendent of Banks of State of New York,

207 NY 11, 15 [1912]).  We will intervene "where the trial court has either abused its

discretion or exercised none at all" (People v Smith, 27NY3d 652, 663 [2016]; see also

People v Williams, 56 NY2d 236, 240 [1982] ["This is an exercise of discretion that should

be left to the trial court. But it is also an exercise of discretion that should be performed by

the trial court"]).  Our trial courts understand that discretion "has long been recognized as

requiring an actual exercise of judgment upon the part of the court . . . [that] necessitates a

consideration by the court of the facts and circumstances which are necessary to make a

sound, fair and just determination.  The court is not permitted to arbitrarily establish a fixed

policy to govern every case, as that is the exact antithesis of discretion" (Application of

Frazzita, 147 NYS2d 11, 16–17 [Sup Ct, Jefferson County 1955]).  That antithesis—not

the abuse of discretion, but its absence—was on display here.  Supreme Court did not

consider any facts or circumstances in denying Mr. Silburn's request for standby counsel.

Instead, it relied on a blanket policy against them—and later reiterated that policy, describing standby counsel as something "I don't allow."

Although we have determined that defendants choosing to proceed pro se have no constitutional right to standby counsel, that conclusion does not mean the decision should be left to the personal preferences of each trial judge, without consideration of the defendant's abilities, the nature, length and complexity of the case, or other factors bearing on the value of standby counsel. Pro se defendants may have no constitutional right to standby counsel, but that proposition does not mean that the availability of standby counsel should turn on the vicissitudes of which judge they happen to draw, whose discretionary decision will be unreviewable. Uniformity could be provided by statute or court rule.

## II.

As I explain below, the majority has misinterpreted CPL 250.10. I would not reverse on that basis, however, because I agree with the majority that the error here was harmless beyond a reasonable doubt (majority op. at 16 n 5).

## A.

The majority interprets CPL 250.10 (1) (c) as defining psychiatric evidence to include testimony offered not only to negate an element of the crime, but also to attack the weight to be given evidence offered by the People. That newly expansive interpretation of a statute impinging somewhat on defendants' "constitutional right to present witnesses" in

their own defense ignores the plain meaning of the provision as well as its legislative history and statutory context (People v Berk, 88 NY2d 257, 266 [1996]).  Accordingly, I would hold that Mr. Silburn did not have to provide notice of his intention to introduce psychiatric evidence offered to persuade the jury to discount the evidentiary weight to be given to his statements to the police.

CPL 250.10 requires a defendant who intends to proffer psychiatric evidence at trial to provide notice of that intention within thirty days of pleading innocent, and allows the People when served with such notice to apply for an order requiring the defendant to submit to an examination by the People's psychiatrist or licensed psychologist (CPL 250.10 [2]; [3]).  It defines "psychiatric evidence" as:

> "(a) Evidence of mental disease or defect to be offered by the defendant in connection with the affirmative defense of lack of criminal responsibility by reason of mental disease or defect.

> "(b) Evidence of mental disease or defect to be offered by the defendant in connection with the affirmative defense of extreme emotional disturbance as defined in paragraph (a) of subdivision one of section 125.25 of the penal law and paragraph (a) of subdivision two of section 125.27 of the penal law.

> "(c) Evidence of mental disease or defect to be offered by the defendant in connection with any other defense not specified in the preceding paragraphs."

(CPL 250.10 [1]). The question is whether to read 250.10 (1) (c) in the light of its fellow paragraphs or as an unheralded restriction on defendants' ability to present their case.

The majority and I agree that in approaching that question "our primary consideration is to discern and given effect to the Legislature's intention" and that "evidence of legislative intent is 'first sought in the words the Legislature has used'" (majority op. at 10 [internal citations and quotation marks omitted]). The statutory text is the "best evidence" and "clearest indicator" of legislative intent (Kimmel v State of New York, 29 NY3d 386, 392 [2017]; Mestecky v City of New York, 30 NY3d 239, 243 [2017] [internal citations and quotation marks omitted]). To resolve questions of statutory interpretation, we therefore "rely first and foremost on the plain language of the statute and canons of statutory interpretation" (Avella v City of New York, 29 NY3d 425, 441 [2017] [DiFiore, CJ, dissenting]). Included among those canons is the proposition that "[w]hen the statutory language at issue is but one component in a larger statutory scheme, it must be analyzed in context and in a manner that harmonizes the related provisions and renders them compatible" (Mestecky, 30 NY3d at 243; see Stat. Law § 97). Similarly, "[w]e have recognized that meaning and effect should be given to every word of a statute and that an interpretation that renders words or clauses superfluous should be rejected" (id.; see Stat. Law § 98 [a]). "Courts should construe unambiguous language to give effect to its plain meaning" (id.).

Here, the plain language of CPL 250.10 (2) is susceptible to only one interpretation: "psychiatric evidence" includes only evidence of mental disease or defect offered in

connection to an affirmative defense or an element of the crime charged.  First, the

"familiar principles of ejusdem generis"—invoked with particular force in this case by the

reference in the term at issue to the "other" defenses "specified in the preceding

paragraphs"—require we limit the general language of paragraph (c) by the specific

phrases of paragraphs (a) and (b) (People v Illardo, 48 NY2d 408, 416 [1979]; see Stat.

Law § 239 [b]).  Those paragraphs enumerate certain statutory defenses that would, if

established, completely exonerate the accused or mitigate the crimes charged – which is

what a "defense" does.  Read with its companions, paragraph (c) can only be meant to

include evidence that would either raise a defense by creating reasonable doubt about the

mens rea element of the crime or establish an affirmative defense (see Penal Law § 25.00;

see e.g. People v Rivers, 281 AD2d 348 [1st Dept 2001] [notice required when defendant

argued his use of a medication prescribed for liver trouble rendered him unaware of what

he was doing at the time of the crime]; People v Oakes, 168 AD2d 893 [4th Dept 1990]

[notice required when defendant argued his low IQ and susceptibility to being led by

authority figures prevented him from knowingly and willingly giving false testimony]).[2]

---

[2] The flaws in the majority's definition can be illustrated by the following hypothetical:
Imagine the police witnessed a defendant assault a fellow bar patron.  That defendant tells
her friends not to worry—she has a great defense—she intends to argue a video of the
events in question should be suppressed as the fruit of an illegal search.  Those friends
would rightly object that that is no defense at all, and that the defendant should instead
establish, e.g., an alibi, her infancy, or that she acted in self-defense.
   The majority hypothesizes that in some cases a defendant's confession is the sole or
overwhelming evidence of guilt (majority op. at 9-10).  Even so, the nature of the
prosecution's proof does not convert a question of admissibility into a defense.  Moreover,
the majority rests its hypothetical on a trial in which "[t]he People's case, in addition to the
inculpatory statements, included two eyewitnesses to the crime" and the People admitted

Second, the majority's expansive interpretation of paragraph (c) would impermissibly reduce paragraphs (a) and (b) to mere surplasage. There would be no reason to specify certain defenses in those paragraphs if (c) is meant, as the majority suggests, to apply to all psychiatric evidence whatsoever. In fact, there would be no reason to retain any of the 92 words of CPL 250.10 (1) that follow "[a]s used in this section, the term 'psychiatric evidence' means evidence of mental disease or defect to be offered by the defendant". What, in the majority's view, are we to make of the remaining 81 percent of the subdivision? Only the more limited interpretation propounded by Mr. Silburn gives meaning to paragraphs (a) and (b) while allowing them to inform the meaning of paragraph (c).

It is unsurprising, then, that prior decisions of this Court have understood CPL 250.10 (1) (c) in the same, limited terms. In People v Almonor, which comprehensively dissected the statute's three classifications, we defined the defense described in 250.10 (1) (c) as "a mens rea-type defense" that "serves to negate a specific intent necessary to establish guilt" (93 NY2d 571, 758 [1999]). Similarly, in People v Gonzalez, we summarized all three paragraphs of 250.10 (1) as operating "in connection with the defenses of lack of criminal responsibility" (22 NY3d 539, 545 [2014]). Yes, those

---

they "were uncertain as to whether they were going to introduce defendant's statements" (People v Miller, 28 NY3d 355, 357 [2016]). The inapposite citation suggests the hypothesized case is infrequent. Even were such cases common, I would nevertheless rest easy if the worst consequence of preferring the people's statutory pronouncements to the People's ease is that a prosecutor may someday have difficulty convincing a jury to convict primarily on the confession of defendants too mentally impaired to have waived their Miranda rights.

statements are dicta. But they are suggestive of how "the statutory language is generally construed according to its natural and most obvious sense"—and thus further evidence of how effect should be given to it here (Stat. Law § 93).[3] The unambiguous meaning of CPL 250.10 allows no other result.

Were we to look beyond the unambiguous language for evidence of the legislature's intent, the legislative history and statutory context of the provision fully support the above interpretation. That history begins with the 1963 amendments to former Code of Criminal Procedure § 336. Those amendments were adopted to solve two specific problems that arose when a defendant surprised the People and the Court by raising an insanity defense once a jury was impaneled: first, the inevitable adjournments that "disturb[ed] the orderly progress of the trial, and could involve the reordering of proof and witnesses, all to the disservice of the court proceedings and the trier of fact" (Almonor, 93 NY2d at 579); second, the prospect that even those adjournments might provide the People "insufficient opportunity to obtain the psychiatric and other evidence necessary . . . to establish, as they must, the defendant's sanity beyond a reasonable doubt" (People v Berk, 88 NY2d 257,

---

[3] Last year's Report of the Advisory Committee on Criminal Law and Procedure to the Chief Administrative Judge of the Courts of the State of New York is similarly suggestive. Its discussion of CPL 250.10 recommends amending paragraph (1) (c) to refer to "any other defense or claim"—a step that would be unnecessary if the many luminaries on that committee shared the majority's expansive interpretation of the current statute (Report at 71). Additionally, that report's conclusion that the statute applies only to evidence of the defendant's mental disease or defect, and not to evidence of a third party's—even though such evidence might be relevant to, e.g., a justification defense—undermines the majority's claim that the statute was intended to eliminate all surprise (id.; see also CPL 250.10 [3] [allowing the People to apply for an order requiring the "defendant submit to an examination"]).

264 [1996], quoting Mem of Commn on Revision of Penal Law and Crim Code, Bill Jacket, L 1963, ch 595 at 4). The Code's new notice provision "avoid[ed] delay" and "enable[d] the People to have defendant examined by their own experts within close temporal proximity to the offense" (id. at 265). It came into being not to provide the People a preview of defendant's arguments, or to eliminate all surprise for its own sake—many things at trial are surprising—but to make it possible for them, within the limits imposed by the right to present a defense (see Report of the Judicial Conference, Bill Jacket, L 1963, ch 595 at 6), to do their job without unfair surprise—that is, to make it possible for them in insanity defense cases, which turn on psychiatric evidence, to establish what they must.

The extension of the statute from insanity to other psychiatric defenses followed a similar rationale. In 1981, we applied the logic of CCP § 336, by then operating under its present designation in the CPL, to a defendant's effort to introduce psychiatric evidence showing he suffered a memory impairment and thus lacked the intent to provide false testimony that was an essential element of the People's perjury charge (People v Segal, 54 NY2d 58 [1981]). The "basic point" of the notice provision has always been the need to make it possible for the People to fulfill their obligation, which is "fundamentally" to "prove every element of the crime, including intent whenever relevant" (id. at 66). Without notice of psychiatric evidence that might undermine proof of an element of the crime, it would be simply impossible—rather than merely more difficult—for the People to carry that burden. Thus, "[a]lthough proof of a mental defect other than insanity may not have acquired the status of a statutory defense, and will not constitute a 'complete' defense in

the sense that it would relieve the defendant of responsibility for all his acts[,] it may in a particular case negate the specific intent necessary to establish guilt" (id. [citations omitted]). In such a case, Segal held, notice was required. The following year, the legislature codified that holding by adding paragraphs (b) and (c)—thereby writing Segal's narrow interpretation of what constitutes a defense for 250.10 (1) (c) purposes into the law as it stands today (majority op. at 11; William C. Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 250.10 at 361 [2014 ed]). That we have since furthered the narrow purpose of the statute by broadly defining who is capable of offering psychiatric evidence is not license to interpret the purpose itself more broadly than the legislature intended (Berk, 88 NY2d 257; Diaz, 15 NY3d 40; but see Gonzalez, 22 NY3d 539).

The statutory context of CPL 250.10 (1) cleanly illustrates the legislature's intent to have paragraph (c) operate only in the limited cases suggested by its plain language and legislative history. CPL 250.10 (2) brings the machinery of the section to life only when a defendant intends to proffer psychiatric evidence "upon a trial"; notice is not required before offering identical evidence at a pretrial hearing. Had Mr. Silburn proffered Dr. Elie's notes to contest the validity of his Miranda waiver at his suppression hearing—21 months into a 24-month pretrial detention period—but not planned to introduce them at trial, he would not have been required to provide notice at all. The majority has not provided an explanation of why evidence that could have been presented, without notice, at a hearing presents such a threat to the principle of fundamental fairness when adduced

at trial.  Instead, the majority argues that "as a practical matter, timely notice . . . would provide the People ample opportunity to obtain rebuttal evidence before the pretrial suppression hearing" (majority op. at 16 n 10).  That rejoinder misses the very point of my argument: very different types of psychiatric-evidence-based arguments are presented at suppression hearings and at trial.  That focus on the trial itself strongly suggests the legislature intended to require notice of psychiatric evidence that proved the defenses typically raised at trial, and did not intend to bring into 250.10's ambit psychiatric evidence that addressed the evidentiary issues, not generally fatal to the People's case, typically raised at pretrial hearings.[4]

"This result does not offend the important policy considerations underlying the notice requirement" (Gonzalez, 22 NY3d at 548).  In disagreeing with the majority's

---

[4] The difference is plainly rooted in type rather than timing.  The legislature's intent in passing CPL 250.10 was to prevent two unfortunate consequences of introducing psychiatric evidence without prior notice: delaying the proceedings and delaying the prosecution's opportunity to obtain countervailing evidence that might be lost forever to the vagaries of mental health conditions if the People's psychiatrist did not examine the defendant shortly after the offense.  The first consequence is of less concern in a suppression hearing, which is less likely to be compromised by a brief adjournment than is a jury trial already underway. The second consequence, however, is fully present; the suppression hearing will take place months or years after the contested statements.  The opportunity to obtain reliable countervailing psychiatric evidence—the "primary aim of the pretrial notice requirement" (Berk, 88 NY2d at 264)—will be lost without notice, and yet notice is not required, even though the potential impact on the People's case—outright exclusion, rather than the possibility of a jury discounting evidence it has already been presented—is much greater.  CPL 710.60 (3) does not, despite the majority's effort to equate it to CPL 250.10, require before suppression hearings anything like the early notice required before introducing psychiatric evidence at trial.  Instead, it allows the court to "summarily deny the [suppression] motion if . . . [t]he motion papers do not allege a ground constituting legal basis for the motion".

interpretation, I do not dispute that 250.10 furthers a "compelling" purpose, as it must to withstand the close scrutiny that attends any restriction on defendants' right to call witnesses on their behalf (Almonor, 93 NY2d at 581; Ronson v Commissioner of Correction, 604 F.2d 176 [2d Cir 1979]).  When defendant seeks only to challenge evidence through which the People can prove their case, however, rather than a required element of the offense or an affirmative defense, the concern for preventing unfair surprise is reduced.  We, no less than the trial courts, "must be vigilant in weighing a defendant's constitutional rights against the resultant prejudice to the People from the belated notice" (People v Diaz, 15 NY3d 40, 47 [2010]).  Here, that vigilance requires us to enforce the balance set by the legislature rather than bolster the People's position in ways that legislature never intended.  Adjusting that balance is not a task for this Court (see Chem Specialties Mfrs. Ass'n v Jorling, 85 NY2d 382, 394 [1995] ["(A) court cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the Legislature did not see fit to enact."]).

Here, the very fact that the error is harmless reinforces the difference between a "defense" – at which the statute is directed – and the weight or admissibility of evidence at trial, at which the statute is not directed.  That is, even if the jury completely credited the psychiatric testimony, treated Mr. Silburn's Miranda waiver as ineffective, and utterly disregarded his subsequent inculpatory statements, no reasonable jury could have acquitted him.  The psychiatric evidence, therefore, was unrelated to any "other defense", and is not subject to CPL 250.10.

B.

Trial courts have the discretion to permit belated notice of an intent to proffer psychiatric evidence at any time "in the interest of justice and for good cause shown" (CPL 250.10 [2]).  The majority rejects Mr. Silburn's claim that, assuming notice was required, the trial court abused that discretion in refusing to permit late notice.  In so doing, it propagates the trial court's confusion over which party had custody of the records in question.  The evidence the defendant sought to introduce was not a privileged medical record but a "police form" (majority op. at 17).  It was generated under the auspices of, and retained by, law enforcement officials.  As such, it could have been admitted and the suppression issue argued without causing much more unfair surprise to the People than the unnoticed EED defense advanced on the People's proof that we approved in Gonzalez (22 NY3d at 548).  Where the People should not have been surprised by the evidence, the relevance of Mr. Silburn's mental health to the voluntariness of his confession was not plain until the interrogating officer testified at trial, and Mr. Silburn relied in good faith on what I believe to have been the correct, and on what was certainly a colorable, interpretation of 250.10 in declining to provide notice, it was error for the trial court to refuse late notice under the statute.  However, because I agree that the Court was justified in precluding the evidence for its lack of probative value, and because the error would have been harmless, I concur in the result reached by the majority on this aspect of the 250.10 question as well.

* * *

Accordingly, I would reverse Mr. Silburn's conviction and remand the case for a new trial before which his motion to proceed pro se, if renewed, could receive the requisite attention from the court.

People v Spence Silburn

No. 28

RIVERA, J. (dissenting):

Defendant Spence Silburn claims he was deprived of his constitutional right to self-representation when the trial judge treated his unequivocal request to proceed *pro se* as if it were conditioned on receiving the assistance of standby counsel. This particular trial judge had a uniform rule against "legal advisors," and informed the defendant that, in his courtroom, "[y]ou either have a lawyer, or you don't have a lawyer." The judge assumed that, given this binary choice, the defendant retracted his request to represent himself.

The judge's policy of denying all requests for standby counsel, regardless of the seriousness of the case or the defendant's sentencing exposure, appears based on this Court's decision in People v Mirenda, in which a majority of this Court held that "[a]

- 1 -

defendant has no constitutional right . . . to the assistance of a lawyer while conducting a *pro se* defense" (57 NY2d 261, 264 [1982]).  Over three-and-a-half decades ago, when the Court decided <u>Mirenda</u>, access to standby counsel was understood to be primarily "a matter of trial management" (<u>id.</u> at 266).  The constitutional right to proceed *pro se* was, then, only a few years old (see <u>People v McIntyre</u>, 36 NY2d 10 [1974] [recognizing a right to proceed *pro se* under the New York state constitution]; <u>Faretta v California</u>, 422 US 806 [1975] [recognizing the same under the federal constitution]).  The American Bar Association Standards for Criminal Justice, which have proved the pre-eminent restatement of constitutional norms and best practices (see Hon. Martin Marcus, <u>The Making of the ABA Criminal Justice Standards</u>, 23 Crim Just 10 [2008-2009]), and which this Court cited in its decision in <u>Mirenda</u> (see 57 NY2d at 266), said relatively little at the time about standby counsel or when defendants were entitled to it, other than to suggest mandatory appointment for the most serious and complex of cases (see ABA Standards for Criminal Justice [2d ed], Special Functions of the Trial Judge, standard 6-3.7 [observing that "the trial judge should consider the appointment of standby counsel" and that such counsel "should always be appointed in cases expected to be long or complicated or in which there are multiple defendants"]).  The formal status of standby counsel was, then, a newly legal and mostly untested development.

More than thirty years' experience has demonstrated the importance of standby counsel for enabling defendants to vindicate their fundamental constitutional rights.  It is now widely acknowledged that standby counsel help strike the delicate, necessary balance

between defendants' constitutional right to counsel and their constitutional right to proceed *pro se*. This is reflected in the updated edition of the American Bar Association Standards for Criminal Justice, Special Functions of the Trial Judge, which now calls for the mandatory appointment of standby counsel where a defendant faces a capital charge or the possibility of lifetime imprisonment without parole, and observes categorically that "[s]tandby counsel should ordinarily be appointed" not only where "trials [are] expected to be long or complicated or in which there are multiple defendants" but also "in any case in which a severe sentence might be imposed" (ABA Standards for Criminal Justice [3rd ed], Special Functions of the Trial Judge, standard 6-3.7 [a]; see also id. "Commentary" ["The overriding interest in appointing standby counsel . . . is to facilitate the function of the criminal justice process, while protecting the autonomy of the defendant and the principles and policies underlying the right to counsel."]; Anne Bowen Poulin, The Role of Standby Counsel in Criminal Cases, 75 NYU L Rev 676 [2000] [exploring the importance of standby counsel to the criminal justice system]; Jona Goldschmidt, Judging the Effectiveness of Standby Counsel, 24 S Cal Rev L & Soc Just 133 [2015] [arguing for a constitutional right to standby counsel]). This near-universal agreement on the importance of standby counsel reflects a shift in prevailing legal norms. In other words, times have changed and the trend has been in favor of appointment of standby counsel to ensure the rights of the accused and the integrity of our criminal justice system.[1]

---

[1] Defense counsel represented at oral argument that few New York courts bar standby counsel based on a categorical rule and the vast majority provide for their appointment.

Nevertheless, defendant does not challenge whether the trial judge's unwavering rule against standby counsel is permissible under <u>Mirenda</u>, nor does he directly attack <u>Mirenda</u>'s holding. Instead, he claims that he made an unequivocal request to proceed *pro se*, not conditioned on his additional request for legal assistance. Given defendant's challenge as limited on appeal to this Court, I agree, for the reasons discussed in Judge Wilson's dissent, that defendant is entitled to a new trial because he was deprived of his constitutional right to proceed *pro se*. I also agree with the dissent's analysis of CPL 250.10 and its conclusion that the majority has misinterpreted the statutory language and legislative purpose of the notice requirement as applied to subsection "c," but, on the facts of this case, the trial court error was harmless.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order affirmed. Opinion by Chief Judge DiFiore. Judges Stein, Fahey, Garcia and Feinman concur. Judge Wilson dissents in an opinion, in which Judge Rivera concurs in a separate dissenting opinion.

Decided April 3, 2018