■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL D. YATES, Appellant. [736 NYS2d 798] —Rose, J. Appeal from a judgment of the County Court of Fulton County (Giardino, J.), rendered July 17, 2000, upon a verdict convicting defendant of the crimes of assault in the first degree, reckless endangerment in the first degree and endangering the welfare of a child.

At trial, Faith Owen, defendant's live-in girlfriend and mother of his two-week-old son, testified that after leaving the baby in defendant's care and going into their bedroom to sleep, she awoke at about 2:00 in the morning and entered their living room to find defendant seated with the baby lying motionless across his lap. Steven Gordon, the investigating police officer, testified that he interviewed defendant later that morning. In the interview, defendant first stated that his son had fallen off a couch, but he then admitted that, after getting angry at the baby's fussing, he had held the baby tightly around the chest with both hands, shook him several times and then dropped him, first onto the couch and then into an infant swing. Gordon also testified that defendant later signed a written statement that was placed in evidence.

Raymond Walsh, the physician who treated the baby at the hospital, testified that a CT scan showed a subdural hematoma on the right side of the baby's brain while a chest X ray revealed two fractured ribs on his left side. Walsh also recounted that an ophthalmic examination had disclosed retinal hemorrhaging in the baby's eyes, opined that these injuries were consistent with shaken baby syndrome, and used a computer simulation to depict how injuries can occur when a baby is shaken. In his testimony, defendant denied having shaken or dropped the baby, and also denied giving the written statement introduced through Gordon. Defendant asserted that the initials on the statement could not be his because his custom was to initial using three letters. On cross-examination, the People introduced other documents signed by defendant which were initialed using only two letters.

After a jury found defendant guilty of assault in the first

degree, reckless endangerment in the first degree and endangering the welfare of a child, he moved to set aside the verdict on the ground that, inter alia, Owen's recantation of her trial testimony constituted newly discovered exculpatory evidence. At the posttrial hearing, Owen testified that she had not gone into their bedroom, but had dozed on the living room couch and that, although defendant and the baby were seated within arm's reach, she had heard nothing. County Court denied the motion and then sentenced defendant to concurrent prison terms, including a determinate term of seven years on the assault conviction. Defendant appeals.

Initially, we find there was sufficient proof of the seriousness of the baby's injuries and the risk of death to the child to support defendant's assault and reckless endangerment convictions (see, Penal Law § 120.10 [3]; § 120.25). Radiologist Eckert Schackow testified extensively regarding the rib fractures and subdural hemorrhaging that he observed when he examined the baby's X rays and CT scans. Defendant's conclusory statement in his brief that Schackow's testimony was "outside of his field of expertise" fails to exclude it from our analysis of the sufficiency of the evidence (see, People v Paun, 269 AD2d 546, lv denied 95 NY2d 801). Turning to Walsh's testimony, we note that an expert may base his opinion on material outside the record, so long as it is of a type reasonably relied upon by experts in the field in forming their professional opinions (see, People v Sugden, 35 NY2d 453, 460-461; People v Fitzgibbon, 166 AD2d 745, 747, lv denied 77 NY2d 838). Walsh based his opinion on his personal examination and treatment of the baby at the hospital, as well as on the results of various tests conducted by other hospital personnel. As these tests were administered to assist Walsh in treating his patient, they have inherent reliability and we find the omission of the actual test results from this record to be of little moment (see, Borden v Brady, 92 AD2d 983, 984 [Yesawich, Jr., J., concurring]; cf., Hambsch v New York City Tr. Auth., 63 NY2d 723, 725). Thus, we conclude that Walsh's opinions were properly admitted into evidence, and the medical evidence supports the inference that defendant's son was seriously injured and placed at grave risk of death (see generally, People v Bleakley, 69 NY2d 490, 495).

We also find that County Court did not err by permitting Walsh to present a computer-generated video demonstrating the mechanics of "shaken baby syndrome." "It is for the trial court, in the exercise of its sound discretion, [and] based upon the nature of proof and the context in which it is offered, to determine whether the value of the evidence outweighs its

potential for prejudice * * *" (*People v Boone*, 176 AD2d 1085, 1086, *lv denied* 79 NY2d 853 [citation omitted]). County Court here permitted the video's introduction solely to "assist the jury in understanding the concept of a shaken baby syndrome." To minimize the potential prejudice, County Court gave defense counsel an opportunity to conduct voir dire regarding the video, instructed the jury both before and after viewing it that the video was admitted for the "strictly limited" purpose of explaining a medical term, and repeatedly warned the jury not to consider it in determining what actually happened to defendant's son. We also find nothing improper in County Court's failure to first conduct a *Frye* hearing. Since shaken baby syndrome is no longer a novel scientific theory (*see, Matter of Antoine J. [Kathy J.]*, 185 AD2d 925, 926), no *Frye* hearing was required (*see, People v Wesley*, 83 NY2d 417, 426).

Next, in rejecting defendant's contention that County Court erred in denying his motion pursuant to CPL 330.30 and 330.40 to set aside the verdict in light of newly discovered evidence, we are mindful that " '[t]here is no form of proof so unreliable as recanting testimony' " (*People v Davenport*, 233 AD2d 771, 773, *lv denied* 89 NY2d 1091, quoting *People v Rodriguez*, 201 AD2d 683, 683, *lv denied* 83 NY2d 914; *see, People v Shilitano*, 218 NY 161, 170). The facts alleged in Owen's recanting testimony, if true, certainly should have been known to defendant in advance of trial because Owen placed herself in his presence in the living room at the time his son was injured (*see,* CPL 330.30 [3]). Further, given that her recantation contradicted defendant's trial testimony as well as her own prior statements to police, we find it unlikely that the proffered evidence would have led to a different verdict (*see, id.; People v Brown*, 126 AD2d 898, 900, *lv denied* 70 NY2d 703).

Nor did County Court err in precluding defendant from presenting expert testimony based on his failure to give notice as required by CPL 250.10. Defendant offered such evidence to show that his medications had affected his ability to give a voluntary statement to police and, thus, challenge the statements introduced through Gordon. As the record indicates that the pharmacological expert had interviewed defendant and was prepared to render an opinion as to his mental condition, we find that defendant was obligated to timely notify the People of his intended use of such evidence (*see, People v Almonor*, 93 NY2d 571, 581). Given the undisputed lack of timely notice, the offer of defendant's belief that notice was not required as the only excuse for noncompliance, and the substantial adjournment that would have been required to permit the

People to retain and prepare a rebuttal expert, we find no abuse of County Court's discretion in refusing to excuse the lack of notice (*see, id.* at 581-582; *People v Berk,* 88 NY2d 257, 265-266, *cert denied* 519 US 859).

Finally, County Court did not err by adding two years to defendant's minimum prison sentence on the assault conviction after considering various factors, including his perjurious trial testimony (*see, People v Davila,* 238 AD2d 625, 626; *see also, People v Harris,* 272 AD2d 225, 225-226, *lv denied* 95 NY2d 935). Defendant's false testimony is relevant to legitimate sentencing goals and the resulting sentence is well within the statutorily prescribed limits (*see,* Penal Law § 70.02 [2] [a]; [3] [a]).

Mercure, J.P., Crew III, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed.