[930 NE2d 264, 904 NYS2d 343]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TEO-
FILO DIAZ, Appellant.

Argued April 28, 2010; decided June 8, 2010

## POINTS OF COUNSEL

*Appellate Advocates*, New York City (*Erica Horwitz* and *Lynn W.L. Fahey* of counsel), for appellant. I. Since lay testimony does not constitute "psychiatric evidence" within the meaning of CPL 250.10, the court erred in requiring appellant to provide notice and submit to examination by a prosecution expert when he intended to raise an extreme emotional disturbance defense based solely on his own testimony, without presenting any expert testimony or documentation regarding his mental state. (*People v Roche*, 98 NY2d 70; *People v Casassa*, 49 NY2d 668; *People v Berk*, 88 NY2d 257; *People v Moye*, 66 NY2d 887; *People v Smith*, 1 NY3d 610; *People v Versaggi*, 83 NY2d 123; *People v Kozlow*, 8 NY3d 554; *People v Hedgeman*, 70 NY2d 533; *People v Ditta*, 52 NY2d 657; *Brooks v Tennessee*, 406 US 605.) II. The prosecution psychiatrist's wide-ranging credibility findings and insistence that appellant was a liar and others were truthful exceeded the scope of his expertise, usurped the jury's function and denied appellant his due process right to a fair trial. (*United States v Scheffer*, 523 US 303; *United States v Barnard*, 490 F2d 907; *People v Cronin*, 60 NY2d 430; *People v Young*, 7 NY3d 40; *People v LeGrand*, 8 NY3d 449; *People v Taylor*, 75 NY2d 277; *Matter of Nicole V.*, 71 NY2d 112; *People v Williams*, 6 NY2d 18; *People v Parks*, 41 NY2d 36; *People v Ciaccio*, 47 NY2d 431.)

*Charles J. Hynes, District Attorney*, Brooklyn (*Shulamit Rosenblum Nemec* and *Leonard Joblove* of counsel), for respondent. I. Because defendant introduced a psychiatrist's testimony on his case, defendant rendered academic the claim that he was improperly ordered to give notice of a psychiatric defense and to submit to an examination. Therefore, that claim is not properly before this Court. In any event, the trial court was authorized, pursuant to CPL 250.10 and the court's inherent power, to order defendant to give notice and to submit to an examination. Furthermore, any error in the court's order was harmless. (*Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 540 US 1017; *People v Cruz*, 26 NY2d 265; *People v Sullivan*, 39 NY2d 903; *People v Finley*, 10 NY3d 647; *People v Berk*, 88 NY2d 257, 519 US 859; *People v Roche*, 98 NY2d 70; *People v Casassa*, 49 NY2d 668; *People v Patterson*, 39 NY2d 288, 432 US 197; *People v Baskerville*, 60 NY2d 374; *People v Almonor*, 93 NY2d 571.) II. Defendant has failed to preserve for appellate

review many of his claims regarding Dr. Berger's testimony. Moreover, the trial court properly permitted Dr. Berger to testify regarding the foundation for his expert opinion and to refute the conclusions of defendant's expert. In any event, any error resulting from the introduction of such testimony was harmless. (*People v Taylor,* 75 NY2d 277; *People v Brown,* 97 NY2d 500; *People v Cronin,* 60 NY2d 430; *People v Williams,* 6 NY2d 18; *People v Doczy,* 210 AD2d 425; *People v Jones,* 261 AD2d 920; *People v Braun,* 199 AD2d 993; *People v Young,* 7 NY3d 40; *People v Ciaccio,* 47 NY2d 431; *People v Higgins,* 5 NY2d 607.)

## OPINION OF THE COURT

GRAFFEO, J.

The primary issue in this case is whether a defendant seeking to raise an extreme emotional disturbance defense is required to provide notice pursuant to CPL 250.10 if the intent is to rely solely on lay testimony to prove the affirmative defense. We left this question open in *People v Smith* (1 NY3d 610 [2004]) and now conclude that CPL 250.10's procedures apply under these circumstances.

On June 4, 2000, about three weeks after defendant Teofilo Diaz had completed a prison term for an assault on Felipa Santana, his former girlfriend, he went to Santana's apartment in violation of an order of protection and strangled her to death in front of their six-year-old daughter. According to defendant, he went "crazy" after Santana told him that their three-year-old son had been fathered by another man. After the killing, defendant fled to Florida where he was apprehended more than a year later. Upon his return to New York, he was charged with two counts of murder in the second degree, two counts of criminal contempt in the first degree, two counts of criminal contempt in the second degree and two counts of endangering the welfare of a child.

Immediately before jury selection, defendant informed the court and the prosecutor that he planned to assert an extreme emotional disturbance defense to the second-degree murder charge. The People objected, contending that defendant's failure to file and serve a written notice as required by CPL 250.10 (2) precluded the presentation of such a defense. Defendant countered that notice was unnecessary because he intended to rely solely on his own testimony rather than presenting expert psychiatric testimony. The trial court allowed defendant to file a late notice under CPL 250.10 (2) in the interest of justice and

also granted an adjournment to permit the People time to have their designated psychiatrist examine defendant.

After the People's psychiatrist, Dr. Berger, prepared his written report (see CPL 250.10 [4]), defendant moved to preclude Dr. Berger from testifying as to his opinions that defendant's extreme emotional disturbance defense was a recent fabrication and that defendant was likely the biological father of the child, questioning defendant's claim that the victim had made a contrary revelation the night of the murder. The People responded that Dr. Berger should be allowed to explain his reasoning in reaching his professional opinion that Santana's killing was not triggered by extreme emotional disturbance. The trial court denied defendant's motion and ruled that, although Dr. Berger could not testify regarding defendant's general credibility, he could explain his perceptions of defendant's truthfulness as they related to defendant's defense.

At trial, defendant testified on his own behalf and presented the testimony of a psychiatrist who had examined him.[1] Defendant's expert declined to express an opinion as to whether defendant strangled Santana as a result of extreme emotional disturbance but said it was possible. On rebuttal, Dr. Berger testified consistently with his written report explaining that, for a variety of reasons, he did not believe that defendant killed Santana while under the influence of extreme emotional disturbance.

At the conclusion of testimony, defendant moved for a mistrial, arguing that Dr. Berger's testimony regarding defendant's credibility deprived him of a fair trial. In denying the motion, the court noted that defendant failed to raise any objections during Dr. Berger's testimony and that, before Dr. Berger's testimony, defense counsel had similarly asked defendant's expert whether it was likely that the victim had told defendant that he was not the boy's father. The jury convicted defendant of second-degree murder, endangering the welfare of a child and two counts of first-degree criminal contempt. The Appellate Division affirmed defendant's conviction (62 AD3d 157 [2d Dept 2009]) and a Judge of this Court granted defendant leave to appeal (12 NY3d 924 [2009]).

The affirmative defense of extreme emotional disturbance serves to reduce the degree of criminal culpability for acts that

---

1. After the trial court granted the People's application to have Dr. Berger examine him, defendant opted to present his own expert at trial.

would otherwise constitute murder. A defendant who proves by a preponderance of the evidence that the homicide was committed while "under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse" will be guilty of first-degree manslaughter rather than second-degree murder (Penal Law § 125.25 [1] [a]; *see also* Penal Law § 125.20 [2]). The defense must be supported by proof that the defendant "suffered from a mental infirmity not rising to the level of insanity at the time of the homicide, typically manifested by a loss of self-control" (*People v Roche*, 98 NY2d 70, 75 [2002]). It requires evidence "of a subjective element, that defendant acted under an extreme emotional disturbance, and an objective element, that there was a reasonable explanation or excuse for the emotional disturbance" (*People v Smith*, 1 NY3d 610, 612 [2004]).

Under CPL 250.10 (2), a defendant is precluded from raising any defense predicated on a mental infirmity, including extreme emotional disturbance, if the defendant fails to file and serve a timely notice of intent to present psychiatric evidence. The trial court possesses broad discretion, however, to grant permission to submit a late notice in the interest of justice at any time prior to the close of evidence (*see* CPL 250.10 [2]). When notice is given under CPL 250.10 (2), the People may apply for an order directing the defendant to submit to an examination by a psychiatrist selected by the People (*see* CPL 250.10 [3]).

On this appeal, defendant claims that lay testimony does not constitute "psychiatric evidence" within the meaning of CPL 250.10 and, therefore, the trial court erroneously required defendant to provide notice and submit to an examination by the People's psychiatrist given that he intended to present an extreme emotional disturbance defense through his own testimony. The People assert that any mental health evidence offered in support of extreme emotional disturbance, including lay testimony, triggers the notice requirement, which provides an opportunity for the prosecution to prepare its case in response to the defense and may require that defendant submit to an examination.

"Psychiatric evidence" is statutorily defined as "[e]vidence of mental disease or defect" to be offered in connection with the defenses of lack of criminal responsibility by reason of mental disease or defect (i.e., insanity), extreme emotional disturbance or any other defense (CPL 250.10 [1] [a], [b], [c]). Prior to 1982, the definition of psychiatric evidence was linked to insanity

because CPL 250.10 formerly applied only where a defendant intended to rely on the insanity defense. But the Legislature expanded the statute in 1982 to mandate notice of a defendant's intention to present psychiatric evidence in support of extreme emotional disturbance as well as any other defense (*see* L 1982, ch 558, § 9). Although the Legislature retained the phrase "mental disease or defect"—language traditionally identified with the insanity defense—in the definitions associated with the added defenses (*see* CPL 250.10 [1] [b], [c]), it is clear that this phrase broadly encompasses any mental infirmity not rising to the level of insanity (*see People v Almonor*, 93 NY2d 571, 578 n 2 [1999]; *People v Berk*, 88 NY2d 257, 263 [1996], *cert denied* 519 US 859 [1996]).

The statutory notice provision is grounded on principles of fairness and is intended "to prevent disadvantage to the prosecution as a result of surprise" (*Berk*, 88 NY2d at 263 [internal quotation marks and citation omitted]). As we have previously explained, it "was designed to allow the prosecution an opportunity to acquire relevant information from any source—not merely from an independent examination of the defendant—to counter the defense" (*id.* at 264).

In *Berk*, we rejected the contention that psychiatric evidence is limited to evidence obtained by means of a psychiatric examination of the defendant for purposes of CPL 250.10. The defendant in that case asserted that he was not obligated to comply with CPL 250.10 because his expert witness, a forensic psychologist, had not examined him and would only testify about a "fight or flight syndrome" and the relationship between memory loss and traumatic events in support of the extreme emotional disturbance defense. In upholding preclusion of the expert's testimony for failure to submit a timely notice, we stated that the defendant's "restrictive reading of the statute . . . [was] not supported by the plain language or the purpose of CPL 250.10" (*id.* at 262). We observed that, inasmuch as the notice provision was intended "to allow the People an opportunity to obtain *any* mental health evidence necessary to refute a defense of mental infirmity, it follows that it applies to *any* mental health evidence to be offered by the defendant in connection with such a defense" (*id.* at 265).

Although *Berk* involved expert testimony, its reasoning applies equally to lay testimony proffered in connection with a mental infirmity defense. The aims of CPL 250.10's notice requirement—preventing unfair surprise and allowing the

People an opportunity to obtain evidence from any source, expert or otherwise—are implicated whether a defendant seeks to establish a mental infirmity through expert or lay testimony, whether by the defendant or other persons, such as witnesses to the events related to the crimes charged. Consequently, for purposes of the notice provision, psychiatric evidence, which we have broadly construed to encompass "any" mental health evidence offered by a defendant, includes lay testimony.

In reaching this result, we are not unmindful that the sanction of preclusion of a defense for failure to comply with the prior notice provision bears on a defendant's constitutional rights to present a defense and call witnesses (*see Ronson v Commissioner of Correction of State of N.Y.*, 604 F2d 176, 178 [2d Cir 1979]). Although no constitutional issue is raised in this case—defendant was permitted to advance an extreme emotional disturbance defense despite the lack of timely notice—trial courts must be vigilant in weighing a defendant's constitutional rights "against the resultant prejudice to the People from the belated notice" (*Berk*, 88 NY2d at 266). We also recognize that the degree of prejudice to the prosecution will vary in different cases and that it may be less significant where a defendant plans to rely on lay testimony alone in support of a mental infirmity defense. Trial courts enjoy wide discretion in considering late notice, as occurred here, and can adjourn proceedings to give the People time to gather rebuttal evidence or, depending on the circumstances and the nature of defendant's proof, permit the trial to proceed without a continuance. Of course, a defendant can choose to testify in his own defense to explain his actions without triggering the notice requirement of CPL 250.10 (2), but he would not be entitled to a jury instruction on extreme emotional disturbance pursuant to Penal Law § 125.25 (1) (a).

Given that we concur that defendant's intention to raise an extreme emotional disturbance defense based on his own testimony required notice, CPL 250.10 (3) authorized the trial judge to compel defendant to submit to an examination by the People's psychiatrist. Although a trial court retains discretion to deny such an application, we perceive no abuse of discretion in the examination order, particularly since the court ruled that Dr. Berger would only be permitted to testify on rebuttal after defendant had presented his extreme emotional disturbance evidence.

Defendant also contends that he was deprived of his right to a fair trial because Dr. Berger's testimony relating to various

credibility issues usurped the jury's function to determine the reliability of the witnesses. Initially, defendant only partially preserved his challenge to Dr. Berger's testimony because his motion in limine sought to restrict Dr. Berger from expressing his opinion that defendant had created an extreme emotional disturbance defense after the fact or that it was likely that defendant was the boy's biological father. Defendant's mistrial motion, made after Dr. Berger had completed his testimony, raised essentially the same points. But defendant failed to make any objections during Dr. Berger's testimony, even when the testimony exceeded the scope of the court's ruling. Consequently, many of the troubling aspects of Dr. Berger's testimony regarding defendant's credibility are unpreserved for review.[2]

As to the preserved challenges, although we agree with defendant that portions of Dr. Berger's detailed testimony "exceeded the foundation necessary to establish the basis for the expert's opinion and invaded the province of the jury to determine defendant's credibility" (*People v Braun*, 199 AD2d 993, 993 [4th Dept 1993], *lv denied* 83 NY2d 849 [1994]), we conclude that the error was harmless because the evidence of defendant's guilt was overwhelming. Defendant, who admittedly strangled Santana with a shoelace, had recently been released from prison in connection with a prior assault on her, providing him with a motive for revenge. A former inmate who knew defendant in prison corroborated the revenge motive, stating that defendant was fixated on Santana and told him that he was going to choke her to death "because that's what she deserves." This witness had contacted authorities independently after reading about Santana's death in a newspaper and testified voluntarily, without a cooperation agreement.

Additionally, defendant's calculated behavior both during and after the homicide does not tend to support his assertion that he acted under an extreme emotional disturbance. Defendant's young daughter, who awoke to her mother's screams, testified that defendant interrupted the assault to hit her across the face

---

2. For example, Dr. Berger stated that he had "published in the area of lying," making him "an expert in evaluating issues of credibility." Although defendant failed to raise an objection, the trial judge sua sponte issued a curative instruction, informing the jury that Dr. Berger could not "say that someone is lying" and that it was for the jury alone to decide whether defendant "is telling you the truth or not about anything that he says." At another point, Dr. Berger analogized the probability that Santana told defendant that he was not the younger child's father to the moon being made of cheese. Again, defendant raised no objection.

when she asked him why he was beating her mother. After dealing with his daughter, defendant resumed his attack on Santana. The daughter also recounted that, after her mother fell to the floor, defendant ordered the children to pack up and she saw him take a stereo, compact discs and other items from the apartment, some of which defendant tried to sell to a cab driver. After attempting to leave the two children with a relative, defendant returned to the crime scene to make certain that Santana was dead before fleeing to Florida. Even assuming Santana informed defendant that he was not the boy's father, his claim that he reasonably experienced extreme emotional disturbance based on that purported revelation was undercut by the fact that he had no contact with that child prior to the day of the killing.

Furthermore, the trial court sua sponte issued three curative instructions to the jury during Dr. Berger's testimony making clear that credibility determinations were solely within its province. The court offered to issue further instructions following the close of evidence, which defendant declined. On this record, there is no significant probability that, but for the errors relating to Dr. Berger's testimony that we have addressed, the jury would have acquitted him of murder (see People v Crimmins, 36 NY2d 230, 241-242 [1975]).

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order affirmed.