Chief Judge DiFIORE.
We are called upon to decide two issues in this appeal. Defendant contends that he was denied his right of self-representation when the trial court denied his request to proceed pro se with "standby counsel." Defendant further argues that he was deprived of a fair trial when the trial court precluded his proffered psychiatric testimony for failure to serve notice on the People pursuant to CPL 250.10. We agree with the courts below that neither contention is consistent with the controlling law. Therefore, we now affirm.
I.
In August of 2011, the police lawfully stopped defendant while he was driving a stolen car with a license that had been suspended and revoked. Defendant was searched and a loaded .45 caliber handgun was found in his jacket pocket. After the police seized the gun, defendant spontaneously declared that it was a good thing the officer had his gun drawn as quickly as he did because defendant would have shot him. Later at the precinct, defendant waived his Miranda rights and admitted to stealing the car at gunpoint. Toward the end of the 15-minute interview, defendant became agitated. He was later taken by police to a hospital for a psychiatric evaluation. Defendant was thereafter indicted for criminal possession of a weapon in the second degree, aggravated unlicensed operation of a motor vehicle in the third degree, and related counts. In August 2012, two psychiatrists examined defendant pursuant to CPL article 730, and a competency hearing was held. At the hearing, defense counsel questioned one of the examining psychiatrists about defendant's history of mental illness, and discussed the symptoms of schizophrenia that defendant exhibited. Defendant was found competent to stand trial.
A year later in 2013, and two weeks before trial, defendant requested to "proceed as pro se." The trial court inquired if defendant wanted to represent himself, to which defendant replied that he did "[n]ot *699 just [want to] represent myself, but having limitation with my counsel." The court plainly informed defendant that "[y]ou either have a lawyer, or you don't have a lawyer.... You choose to represent yourself, you sit there by yourself. You want to have a lawyer, you have a lawyer." The **784 court then asked, "All right?" The record does not reflect defendant's response, if any, and defense counsel continued to represent defendant at trial.
Defendant raised the issue again after voir dire, when defense counsel informed the court that defendant had wanted to question the prospective jurors and sought to question the witnesses, in addition to the questioning done by his attorney. The court again told defendant that "you have a right to represent yourself without an attorney. Or you have the right to have an attorney." Defendant maintained that the Sixth Amendment gave him the right to the assistance of counsel and he wanted "assistance" from his counsel-for his attorney to "act[ ] like an aide." The court told defendant he could not have dual representation. Although defendant replied, "I was asking if I could go pro se with standby counsel," he again clarified that he wanted the opportunity to ask any questions that his attorney failed to ask. The court denied the request.
During trial, despite having never served a CPL 250.10 notice, defense counsel sought to introduce the testimony of the psychiatrist who evaluated defendant, at the behest of the police, the day he was arrested. Counsel informed the court that the psychiatrist diagnosed defendant as "bipolar, with psychotic features" and, counsel argued, this diagnosis rendered defendant mentally incapable of voluntarily waiving his Miranda rights. After hearing from the psychiatrist outside the presence of the jury, the court precluded the evidence, concluding that (i) the proffered testimony was of slight probative value because the psychiatrist had no recollection of examining defendant; (ii) the evidence was insignificant; and (iii) the failure to serve a CPL 250.10 notice prejudiced the People.
The jury convicted defendant of criminal possession of a weapon in the second degree, aggravated unlicensed operation of a motor vehicle in the third degree, and a related offense. The Appellate Division affirmed, determining that defendant's request to proceed pro se was equivocal since defendant asked only to proceed pro se with standby counsel ( 145 A.D.3d 799, 799-800, 43 N.Y.S.3d 461 [2d Dept. 2016] ). Thus, the Court concluded that defendant did not make a "knowing, voluntary, and intelligent waiver of the right to counsel" ( id. at 799, 43 N.Y.S.3d 461 [internal quotation marks and citation omitted] ). The Court further held that the trial court did not err in precluding defendant's proffered psychiatric evidence because defendant did not provide timely notice of his intent to present the evidence under CPL 250.10 ( id. at 801, 43 N.Y.S.3d 461 ).
A Judge of this Court granted defendant leave to appeal ( 29 N.Y.3d 952, 54 N.Y.S.3d 383, 76 N.E.3d 1086 [2017] ).
II.
Defendant argues that the trial court violated his constitutional right to self-representation when it denied his requests to proceed pro se without making any further inquiry. He maintains that the request was unequivocal despite the fact that it was conditioned on his request to proceed with "standby counsel." In response, the People assert that the trial court did not err in denying defendant's request to proceed pro se, since defendant, as evidenced in the colloquy conducted by the court, never made an *700 unequivocal request to represent himself alone, without counsel.
Under the New York and Federal Constitutions, a defendant has the right to proceed without counsel and to represent him or herself at trial, and the State may not force counsel upon a defendant (see N.Y. Const. art I, § 6 ; Faretta v. California, 422 U.S. 806, 836, 95 S.Ct. 2525, 45 L.Ed.2d 562 [1975] ). In **785 People v. McIntyre, we set forth a three-prong test, long used to address a defendant's right to self-representation:
"A defendant in a criminal case may invoke the right to defend pro se provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues" ( 36 N.Y.2d 10, 17, 364 N.Y.S.2d 837, 324 N.E.2d 322 [1974] ).
If a defendant asserts a timely and unequivocal request to proceed pro se, then the trial court must "conduct a 'searching inquiry' to ensure that the defendant's waiver [of the right to counsel] is knowing, intelligent, and voluntary" ( Matter of Kathleen K. [Steven K.], 17 N.Y.3d 380, 385, 929 N.Y.S.2d 535, 953 N.E.2d 773 [2011] ; see also People v. White, 56 N.Y.2d 110, 117, 451 N.Y.S.2d 57, 436 N.E.2d 507 [1982] ).
In clarifying what "unequivocally" means, we have explained that the pro se request must be "clearly and unconditionally presented to the trial court," so that "convicted defendants may not pervert the system by subsequently claiming a denial of their pro se right" ( McIntyre, 36 N.Y.2d at 17, 364 N.Y.S.2d 837, 324 N.E.2d 322 ). We determined that a defendant's request to proceed pro se was not unequivocal, where "[a]t no time did [defendant] demonstrate an actual fixed intention and desire to proceed without professional assistance in his defense to the charges against him" ( People v. Payton, 45 N.Y.2d 300, 314, 408 N.Y.S.2d 395, 380 N.E.2d 224 [1978], revd on other grounds 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 [1980] ). We have further concluded that the application to proceed pro se "must reflect a purposeful decision to relinquish the benefit of counsel and proceed singularly" ( Matter of Kathleen K., 17 N.Y.3d at 386, 929 N.Y.S.2d 535, 953 N.E.2d 773 ).[1]
In People v. Mirenda, 57 N.Y.2d 261, 265, 455 N.Y.S.2d 752, 442 N.E.2d 49 [1982] ), we rejected the argument that a defendant has a constitutional right to the assistance of standby counsel while conducting a pro se defense, establishing that "[n]o such right is guaranteed by either the State or Federal Constitution." Nearly 20 years after Mirenda, we reaffirmed that, "[w]hile the Sixth Amendment and the State Constitution afford a defendant the right to counsel or to self-representation, they do not guarantee a right to both. These are separate rights depicted on the opposite sides of the same constitutional coin. To choose one obviously means to forego the other" ( *701 People v. Rodriguez, 95 N.Y.2d 497, 501, 719 N.Y.S.2d 208, 741 N.E.2d 882 [2000] [internal quotation marks, brackets and citation omitted] ). In doing so, we held that "[b]ecause a defendant has no constitutional right to hybrid representation, the decision to allow such representation lies within the sound discretion of the trial court" ( id. at 502, 719 N.Y.S.2d 208, 741 N.E.2d 882 ). "An accused awaiting trial therefore has only two choices regarding legal representation-proceed with counsel or waive the protection of the Sixth Amendment and **786 proceed pro se" ( People v. Henriquez, 3 N.Y.3d 210, 215, 785 N.Y.S.2d 384, 818 N.E.2d 1125 [2004] ). Here, the record supports the trial court's conclusion that defendant's request to proceed pro se was equivocal, and was conditioned on the assistance of counsel. Accordingly, the trial court did not err in failing to conduct a further "searching" inquiry in response to defendant's request.
Indeed, at the outset of the second request, defense counsel informed the court that defendant wanted to question prospective jurors and witnesses in addition to the questioning done by counsel. The court again explained to defendant that the court did not allow "standby counsel," and that defendant had either the right to represent himself without counsel or the right to have an attorney. Defendant responded that the Sixth Amendment gave him the right to the aid and assistance of counsel. Defendant's invocation of the Sixth Amendment during the colloquy and his evident desire to have counsel question the prospective jurors and witnesses along with him is neither a waiver of the right to counsel nor the substance of an unequivocal request to represent himself. The United States Supreme Court "explicit[ly]" stated that the appointment of standby counsel is "to relieve the [trial] judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals" ( McKaskle v. Wiggins, 465 U.S. 168, 184, 104 S.Ct. 944, 79 L.Ed.2d 122 [1984] ). It is not to provide a defendant a cocounsel in front of the jury. Here, while defendant used the words "standby counsel," the substance of his request-that he be permitted to ask questions in addition to those asked by his attorney-demonstrated that he was seeking dual representation.[2] Whether his request is labeled as one of "dual representation," "hybrid representation," or "pro se with standby counsel," the record supports the conclusion that what this defendant wanted was his right to the assistance of counsel at trial-i.e., he was not seeking to waive his constitutional right to counsel-and he never requested to proceed without counsel.[3] Thus, defendant did not satisfy *702 the first prong of McIntyre that he unequivocally request to represent himself and, therefore, the trial court did not err in failing to conduct a further inquiry.[4] **787 Defendant urges that a court presented with a request to proceed pro se with "standby counsel" should make an in-depth inquiry whether defendant still desires to represent himself, once defendant is informed that dual representation will not be provided. We hold that further colloquy by the trial court is not constitutionally required when a defendant remains equivocal, despite having been informed by the court on more than one occasion that his right to self-representation includes a waiver of the right to an attorney, as here. When a defendant asks to proceed "pro se with standby counsel" and the trial court explains the scope of the right to proceed pro se, and specifically denies the defendant's request for hybrid representation, the better practice would be to again ask the defendant if he or she still wants to proceed without counsel. Nevertheless, "[w]hile such inquiries may be the better practice, we will not compel courts to engage in any particular catechism" before denying an equivocal request to proceed pro se because "[n]either our Constitution nor our precedent requires it" ( Rodriguez, 95 N.Y.2d at 502, 719 N.Y.S.2d 208, 741 N.E.2d 882 ). As it is the trial court's function to "ensur[e] the orderly administration of the proceedings" ( id. , citing Mirenda, 57 N.Y.2d at 266, 455 N.Y.S.2d 752, 442 N.E.2d 49 ), it remains within the trial court's discretion to conduct any further colloquy where a defendant does not unequivocally request to proceed without counsel, but instead prefers to proceed with the assistance of counsel.[5]
III.
CPL 250.10(2) prohibits a defendant from introducing psychiatric evidence as to his or her mental capabilities at trial "unless the defendant serves upon the people and files with the court a written notice of his intention to present psychiatric evidence." "Such notice must be served and filed before trial and not more than thirty days after entry of the plea of not guilty to the indictment" ( CPL 250.10[2] ). The term "psychiatric evidence" is defined as "[e]vidence of mental disease or defect to be offered by the defendant in connection with" either (a) "the affirmative defense of lack of criminal responsibility by reason of mental disease or defect," (b) the *703 "affirmative defense of extreme emotional disturbance," or (c) "any other defense not specified in the preceding paragraphs" ( CPL 250.10[1] ). We previously held CPL 250.10(1)(c) is a "catch-all provision that contemplates a defendant's use of psychiatric evidence in connection with 'any other defense' " ( People v. Almonor, 93 N.Y.2d 571, 578, 693 N.Y.S.2d 861, 715 N.E.2d 1054 [1999] ). Defendant argues that the trial court erred in precluding his unnoticed psychiatric evidence because a challenge to the voluntariness of a confession pursuant to CPL 710.70 is not a "defense" and is thus outside the ambit of CPL 250.10(1)(c). We disagree. **788 Defendant narrowly construes the phrase "any other defense" in CPL 250.10(1)(c) to be limited to psychiatric evidence offered in support of a complete defense to an element of the crime, such as mens rea; he does not interpret the statute to include a defense strategy to offer evidence that allows the jury to negate the prosecution's evidence of guilt. As explained below, this argument ignores the legislative intent, our precedent espousing the very purpose of notice, and the fact that, if a defendant's confession was the primary evidence of guilt and the defendant raises the issue of voluntariness at trial, then voluntariness could be a complete defense to the crime (see People v Miller , 28 N.Y.3d 355, 359, 45 N.Y.S.3d 336, 68 N.E.3d 61 [2016] ).[6] Notably, our Court has previously labeled a defendant's challenge to the voluntariness of his statement pursuant to CPL 710.70 a "defense" (see People v. Combest, 4 N.Y.3d 341, 347-348, 795 N.Y.S.2d 481, 828 N.E.2d 583 [2005] ).[7] Moreover, lower courts have found that the CPL 250.10 notice requirement applies when a defendant seeks to use psychiatric evidence at trial to challenge the voluntariness of his or her statements (see People v. Brown, 4 A.D.3d 886, 888, 772 N.Y.S.2d 143 [4th Dept. 2004] ; People v. Yates, 290 A.D.2d 888, 890, 736 N.Y.S.2d 798 [3d Dept. 2002] ; People v. Matthews, 57 Misc.3d 1210[A], 2017 N.Y. Slip. Op. 51371[U], *6 [Sup. Ct., N.Y. County 2017]; People v. Oliver, 45 Misc.3d 765, 773-774, 991 N.Y.S.2d 260 [Sup. Ct., Kings County 2014] ; People v. Prater, 172 Misc.2d 831, 833, 658 N.Y.S.2d 569 [Sup. Ct., Kings County 1997] ; People v. Morello, 142 Misc.2d 142, 143-144, 536 N.Y.S.2d 384 [Westchester County Ct. 1988] ). *704 A.
In interpreting a statute, "our primary consideration is to discern and give effect to the Legislature's intention" ( Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 N.Y.3d 106, 120, 945 N.Y.S.2d 613, 968 N.E.2d 967 [2012] ). Evidence of legislative intent is "first sought in the words the Legislature has used. But we may not stop there; the spirit and purpose of the act and the objects to be accomplished must also be considered" ( People v. White, 73 N.Y.2d 468, 473-474, 541 N.Y.S.2d 749, 539 N.E.2d 577 [1989] [citations omitted]; see also **789 Matisoff v. Dobi, 90 N.Y.2d 127, 133, 659 N.Y.S.2d 209, 681 N.E.2d 376 [1997] ["where a statute's language is capable of various constructions, the 'obvious spirit and intent' of a statute necessarily informs the meaning and import to be accorded that language"] ). Since the phrase "any other defense" in CPL 250.10(1)(c) is susceptible to multiple interpretations, the phrase must be construed in light of the legislature's purpose in enacting it (see Kimmel v. State of New York, 29 N.Y.3d 386, 393, 80 N.E.3d 370 [2017] ["We have repeatedly held that 'the word "any " means "all" or "every" and imports no limitation " '] (citation omitted) ] ). An inquiry into the purpose of the statute "requires examination of the statutory context of the provision as well as its legislative history" ( Matter of Sutka v. Conners, 73 N.Y.2d 395, 403, 541 N.Y.S.2d 191, 538 N.E.2d 1012 [1989] ).
The precursor to CPL 250.10 was the former Code of Criminal Procedure § 336, which required defendants to serve and file notice only if they intended to rely on the insanity defense (seeCode Crim Pro § 336).[8] CPL 250.10 was later enacted and subsequently amended in 1980, and the notice requirement remained limited to the insanity defense (see L 1980, ch 548, § 7). In 1982, however, the legislature codified this Court's decision in People v. Segal, 54 N.Y.2d 58, 444 N.Y.S.2d 588, 429 N.E.2d 107 [1981] ) by expanding the notice requirement to include the affirmative defense of extreme emotional disturbance in subdivision (1)(b) and the catchall "any other defense" in subdivision (1)(c) (see L 1982, ch 558, § 9; People v. Cruickshank, 105 A.D.2d 325, 329, 484 N.Y.S.2d 328 [3d Dept. 1985], affd sub nom. People v. Dawn Maria C., 67 N.Y.2d 625, 499 N.Y.S.2d 663, 490 N.E.2d 530 [1986] ; see also Joseph W. Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 250.10 at 425[1982 ed] ). In 1984, subdivision (1)(a) of the statute was amended to reflect the change of the insanity defense to an affirmative defense (see L 1984, ch 668, §§ 6, 7). As we stated, " CPL 250.10 and its notice provisions initially contemplated *705 only an insanity defense (now an affirmative defense). Recognizing, however, that psychiatric evidence could properly be introduced for mitigatory purposes, the Legislature broadened the definition of psychiatric evidence to include the two other categories" ( Almonor, 93 N.Y.2d at 578, 693 N.Y.S.2d 861, 715 N.E.2d 1054 ).
Indeed, as evidenced by the statute's bill jacket, the purpose of the 1982 amendments was to "provide for a simplified and expanded exchange of [evidentiary] information between the prosecution and defense" before trial (Governor's Mem approving L 1982, ch 558, 1982 Legis Ann at 186). This process would "markedly increase[ ]" the "efficiency and fairness of criminal proceedings" and "improve[ ]
**790 evidentiary discovery practices" with the goal of reducing "judicial delay" (id. ). As we explained,
"The Legislature enacted CPL 250.10 to promote procedural fairness and orderliness. The statute is designed to create a format by which psychiatric evidence may be prepared and presented manageably and efficiently, eliminating the element of surprise. With that in mind the Legislature has formulated a procedure that depends upon proper notification, adversarial examination, and preclusion when appropriate" ( Almonor, 93 N.Y.2d at 577-578, 693 N.Y.S.2d 861, 715 N.E.2d 1054 ).
That is, the very purpose behind the statute was to eliminate surprise and promote fairness at trial by allowing the People, upon defendant's timely notice, the opportunity pretrial to obtain otherwise privileged psychiatric evidence to rebut defendant's affirmative use of the evidence at trial. Therefore, allowing a defendant to use unnoticed psychiatric evidence without good cause shown would be contrary to the "legislative intent ... to ensure the prosecution sufficient opportunity to obtain the psychiatric and other evidence necessary to refute the proffered defense of mental infirmity" ( People v . Berk , 88 N.Y.2d 257, 264, 644 N.Y.S.2d 658, 667 N.E.2d 308 [1996] [internal quotation marks, citation and emphasis omitted] ).
The legislature also intended to avoid the delay that would result from the surprise presentation of such evidence at trial, which, in fairness, would necessitate an adjournment so that the People could have the defendant examined by their own mental health expert and obtain the relevant medical records (see CPL 250.10[3] ). These principles apply equally whether the psychiatric evidence is offered in connection with a mens rea defense, or in connection with the defendant's challenge to the voluntariness of his or her statements to the police. It is the very nature of psychiatric evidence that mandates the requirement of notice, if the defendant intends to rely on the evidence to negate the People's evidence of guilt. Thus, it is entirely consistent with the purpose of the statute to construe the phrase "any other defense" as used in CPL 250.10(1)(c), to apply to defendant's offer of psychiatric evidence in support of his contention that due to his mental illness, his statements, which are direct evidence of guilt, must be rejected by the jury (see e.g. People v. Rumble, 45 N.Y.2d 879, 880-881, 410 N.Y.S.2d 806, 383 N.E.2d 108 [1978] ).
Moreover, our prior case law demonstrates that we have repeatedly construed the statute broadly in order to carry out the legislative intent to ensure the fairness of the trial. For example, in Berk, we expanded the parameters of what constitutes "psychiatric evidence" under CPL 250.10, by holding that the plain language of the statute requires notice of an intention to offer psychiatric evidence irrespective of whether the expert actually examined the defendant ( *706 Berk, 88 N.Y.2d at 263, 644 N.Y.S.2d 658, 667 N.E.2d 308 ). In People v. Pitts, the companion case to Almonor, the defendant timely served notice of his intention to offer psychiatric evidence relating to his acute stress disorder in connection with his insanity affirmative defense, but because the defendant did not timely notify the People that the same psychiatric evidence surrounding the defendant's stress disorder was also going to be used to support a defense based on lack of assaultive intent, the court precluded the evidence ( 93 N.Y.2d at 581, 693 N.Y.S.2d 861, 715 N.E.2d 1054 ). In other words, although the People were aware of the "general nature of the alleged psychiatric malady" the defendant sought to introduce, they had no notice of "its relationship to a particular, proffered defense" and thus they were "not ... able to conduct a meaningful psychiatric examination of [their] own" ( id. ). We therefore held preclusion **791 of the evidence was appropriate. In People v. Diaz, 15 N.Y.3d 40, 904 N.Y.S.2d 343, 930 N.E.2d 264 [2010] ), we applied the notice requirement to mental health testimony provided by lay witnesses. We stated, "for purposes of the notice provision, psychiatric evidence, which we have broadly construed to encompass 'any' mental health evidence offered by a defendant, includes lay testimony" ( id. at 47, 904 N.Y.S.2d 343, 930 N.E.2d 264 ; see also Segal, 54 N.Y.2d at 66-67, 444 N.Y.S.2d 588, 429 N.E.2d 107 [expanding the statute, then limited to the insanity defense, to apply to a defense based on mental defect that negated intent]; Matter of Lee v. County Ct. of Erie County, 27 N.Y.2d 432, 441-442, 318 N.Y.S.2d 705, 267 N.E.2d 452 [1971] [affording the prosecution the right to have its own expert examine the defendant who seeks to call a psychiatrist at trial] ).[9]
The dissent asserts, among other things, that our interpretation of the statutory term "any other defense" in CPL 250.10 to mean what it plainly says-any other defense-somehow impinges on a defendant's "constitutional right to present witnesses" and that CPL 250.10 assists the People in proving "what they must " (see Wilson, J., dissenting op. at 167, 171, 74 N.Y.S.3d at 797, 800, 98 N.E.3d at 713, 715). However, courts have long rejected the notion that a statutory pretrial notice requirement somehow shifts the People's burden of proof or is a constitutional violation of the right to present a defense (see People v. Rodriguez, 3 N.Y.3d 462, 468-469, 787 N.Y.S.2d 697, 821 N.E.2d 122 [2004] ; see also Leland v. Oregon, 343 U.S. 790, 799-800, 72 S.Ct. 1002, 96 L.Ed. 1302 [1952] ;
*707 People v. Kohl, 72 N.Y.2d 191, 193-194, 532 N.Y.S.2d 45, 527 N.E.2d 1182 [1988] ). The statute simply provides the People pretrial access to generally unavailable evidence for the limited purpose of rebuttal, and requires a defendant to open the door to the People's rebuttal by affirmatively presenting the psychiatric defense (see Buchanan v. Kentucky, 483 U.S. 402, 422-423, 107 S.Ct. 2906, 97 L.Ed.2d 336 [1987] ). As the United States Supreme Court has explained, "if a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation" ( id. at 422, 107 S.Ct. 2906 ).[10]
**792 As concluded by the courts below, the applicability of CPL 250.10 to the instant case is wholly consistent with our longstanding interpretation that there can be no surprise psychiatric evidence and that pretrial notice is necessary based upon "principles of fairness and the integrity of the trial process" ( Segal, 54 N.Y.2d at 65, 444 N.Y.S.2d 588, 429 N.E.2d 107 ). Thus, in order not to defeat the purpose of the statute, we construe the phrase "any other defense," as used in CPL 250.10(1)(c), to apply to psychiatric evidence offered by defendant in support of his contention that his statements to police were involuntary because his diagnosis of bipolar disorder rendered him incapable of understanding and waiving Miranda warnings.
B.
Defendant next argues that the record belies the trial court's finding that preclusion of the evidence was warranted on the ground that the surprise evidence prejudiced the People. In support, he claims the record shows that the People were aware early on that defendant had a mental illness. However, there are two critical flaws in this argument. First, knowing that defendant had a mental illness did not put the prosecutor on notice that defendant intended to introduce evidence at trial that his diagnosis rendered him incapable of giving a voluntary statement to the police. To be sure, defendant never even raised this voluntariness argument at his Huntley hearing. Second, defendant's contention ignores the law that his own medical records are privileged until he waives the privilege (see Matter of Lee, 27 N.Y.2d at 441, 318 N.Y.S.2d 705, 267 N.E.2d 452 ). When defense counsel told the court that he had not received any hospital records from the prosecution, the court shrewdly observed that defendant's medical records were privileged and that the prosecution had no right to look at them. This is one of the primary reasons for CPL 250.10's existence. The People cannot have a mental health expert of their choosing examine a defendant nor can they obtain his or her medical records due to the privileged and confidential nature of the evidence, unless the defendant wants to affirmatively use a mental condition as evidence at trial, thereby waiving Fifth Amendment rights and statutory privileges *708 (see id. ; see also Segal, 54 N.Y.2d at 64-65, 444 N.Y.S.2d 588, 429 N.E.2d 107 ; CPLR 4507 ).
Finally, defendant contends that the court's refusal to excuse the lack of notice was an abuse of discretion since under the statute, the court may accept late notice "[i]n the interest of justice and for good cause shown" ( CPL 250.10[2] ). The record flatly refutes defense counsel's claim that good cause was shown for his untimeliness. Defense counsel was fully aware that defendant had a longstanding history of mental health problems, including diagnoses of bipolar disorder and schizophrenia, as evidenced by the record of the CPL article 730 hearing, which took place a year before the trial. Furthermore, on the second day of trial, defense counsel informed the court that he had been trying unsuccessfully to contact the psychiatrist witness "for weeks," contradicting his current assertion that he did not plan to challenge the voluntariness of defendant's **793 statements to the police until hearing the officer's trial testimony.
The trial court, after examining the psychiatrist outside the presence of the jury, precluded the evidence-a police form containing a mere diagnosis-as speculative on the issue of voluntariness and because the People had no opportunity to examine defendant or obtain rebuttal evidence. That the psychiatrist testified that he had no recollection of the examination of defendant is also part of this equation. So too is the fact that there is no indication in the record that a diagnosis of bipolar disorder renders a defendant incapable of knowingly and voluntarily waiving his Miranda rights. Thus, the court reasonably decided to preclude the evidence at trial. Defendant's claim that the trial court abused its discretion in doing so is meritless.[11]
CPL 250.10 was designed to preserve the integrity of the trial process predicated on a principle of fairness. Accordingly, the trial court neither erred nor abused its discretion in precluding defendant's unnoticed psychiatric evidence as there was no justification for the surprise on this record, and to allow it would contradict the statutory purpose behind the notice requirement.
Accordingly, the order of the Appellate Division should be affirmed.

In the context of a defendant's constitutional right to counsel, we stated that a defendant asking the police "should I speak to a lawyer" did not amount to an unequivocal request for an attorney, such that his right to counsel did not attach and the statement he made to the police was not in violation of the Federal and State Constitutions (see People v. Hicks, 69 N.Y.2d 969, 970, 516 N.Y.S.2d 648, 509 N.E.2d 343 [1987] ; see also People v. Mitchell, 2 N.Y.3d 272, 276, 778 N.Y.S.2d 427, 810 N.E.2d 879 [2004] ; People v. Glover, 87 N.Y.2d 838, 839, 637 N.Y.S.2d 683, 661 N.E.2d 155 [1995] ; People v. Roe, 73 N.Y.2d 1004, 1006, 541 N.Y.S.2d 759, 539 N.E.2d 587 [1989] ; People v. Fridman, 71 N.Y.2d 845, 846, 527 N.Y.S.2d 737, 522 N.E.2d 1035 [1988] ).

The fast food analogy offered in Judge Wilson's dissent, joined by Judge Rivera, is both inapt and inappropriate. Whatever its intended effect, the use of such a rhetorical device trivializes the constitutional rights of defendant implicated on this appeal. In any event, the purported analogy presented by the dissent is completely defeated by the factual record.

In interpreting the federal right to self-representation under Faretta, the Second Circuit has pointedly explained,
"[t]he purpose of requiring that a criminal defendant make an 'unequivocal' request to waive counsel is twofold. First, unless the request is unambiguous and unequivocal, a convicted defendant could have a colorable Sixth Amendment appeal regardless of how the trial judge rules: if his request is denied, he will assert the denial of his right to self-representation; if it is granted, he will assert the denial of his right to counsel. Second, the requirement of an unambiguous and unequivocal request inhibits any 'deliberate plot to manipulate the court by alternatively requesting, then waiving counsel' " (Williams v. Bartlett, 44 F.3d 95, 100-101 [2d Cir.1994] [internal citations omitted] ).

The cases relied on by the Wilson dissent (People v. Crampe, 17 N.Y.3d 469, 932 N.Y.S.2d 765, 957 N.E.2d 255 [2011] and People v. Providence, 2 N.Y.3d 579, 780 N.Y.S.2d 552, 813 N.E.2d 632 [2004] ) are inapposite as they both address the sufficiency of the colloquy the trial court has with a defendant who unequivocally requests to proceed pro se. The records in these cases demonstrate that in each case the defendant unequivocally, unconditionally and repeatedly requested to represent himself, which then triggered the second prong under McIntyre, requiring the court to inquire whether the defendant knowingly, voluntarily, and intelligently waived counsel. Here, by contrast, we are confronted with the first prong of McIntyre: whether the defendant unequivocally requested to represent himself without counsel. Defendant does not satisfy this initial prong on the record before us.

The Wilson dissent's alternative conclusion-the trial court abused its discretion in denying defendant's request for hybrid representation-is one that is not urged by defendant on this appeal nor was it raised below (see Wilson dissenting op. at 166-167, 74 N.Y.S.3d at 796-97, 98 N.E.3d at 711-13; see also Rivera dissenting op. at 176, 74 N.Y.S.3d at 803-04, 98 N.E.3d at 719 [acknowledging the issue is not before us] ).

Contrary to the musings of the dissent, cases where confessions constitute the primary evidence of guilt are not rare and since 1881, the legislature has included statutory safeguards requiring corroboration of a defendant's confession (see Wilson dissenting op. at 169-170 n. 2, 74 N.Y.S.3d at 798-99 n. 2, 98 N.E.3d at 714 n. 2; see also People v. Lipsky, 57 N.Y.2d 560, 570, 457 N.Y.S.2d 451, 443 N.E.2d 925 [1982] ; CPL 60.50 ).

In the context of an ineffective assistance of counsel claim, we treated a defendant's challenge to the voluntariness of his confession as a "defense" (see People v. Oliveras, 21 N.Y.3d 339, 347, 971 N.Y.S.2d 221, 993 N.E.2d 1241 [2013] ). There, the defendant moved to vacate his conviction for murder in the second degree, arguing his trial counsel was ineffective for "fail[ing] to provide timely notice pursuant to CPL 250.10, to present evidence of defendant's psychiatric history, to obtain defendant's psychiatric records, [and] to consult an expert to explain the relationship between defendant's psychiatric history and the voluntariness and reliability of his statements" (id. at 344, 971 N.Y.S.2d 221, 993 N.E.2d 1241 ). We noted that "other than defendant's statements to the police, no other evidence directly connected defendant with the murder" (id. at 343, 971 N.Y.S.2d 221, 993 N.E.2d 1241 ), and therefore, we concluded that defense counsel was ineffective for failing to "secure and review" defendant's psychiatric records because "trial counsel's inability to undermine the voluntariness of [defendant's inculpatory] statements was crucial" (id. at 348, 971 N.Y.S.2d 221, 993 N.E.2d 1241 ).

The purpose behind the notice requirement in former Code of Criminal Procedure § 336 was to ensure that the People were not unfairly surprised at trial. According to the Legislative Memoranda accompanying the former provision,
"At present, there is no provision in the Code requiring notice that the defendant intends to present evidence of mental disease or defect. In fact, he may offer such evidence under a plea of not guilty without the specification of insanity and, if the defense is sustained, the jury may acquit. This, obviously, may place the People at an unfair disadvantage in that, surprised by the sudden interposition of this collateral defense, they may have insufficient opportunity to obtain the psychiatric and other evidence necessary to refute it and to establish, as they must, the defendant's sanity beyond a reasonable doubt. The bill would rectify this situation" (Mem of Temp Commn on Rev of the Penal Law and Crim Code following L 1963, ch 595, reprinted in 1963 McKinney's Session Laws of N.Y. at 1986; see also People v. Berk, 88 N.Y.2d 257, 263-264, 644 N.Y.S.2d 658, 667 N.E.2d 308 [1996] ).

Despite the dissent's recognition that "a court cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the Legislature did not see fit to enact" (Matter of Chemical Specialties Mfrs. Assn. v. Jorling, 85 N.Y.2d 382, 394, 626 N.Y.S.2d 1, 649 N.E.2d 1145 [1995] [quotation marks and citation omitted]; see Wilson dissenting op. at 174, 74 N.Y.S.3d at 802, 98 N.E.3d at 717-18), this is precisely what the dissent does when it concludes that psychiatric evidence offered by defendant in connection with 'any other defense' under subdivision (1)(c) "can only be meant to include evidence that would either raise a defense by creating reasonable doubt about the mens rea element of the crime or establish an affirmative defense" (Wilson dissenting op. at 169, 74 N.Y.S.3d at 798, 98 N.E.3d at 714). Where, as here, the legislature, in contrast to subdivision (1)(a) and (b), omitted the word "affirmative" from subdivision (1)(c), it is not appropriate for us to insert it. It was plainly the intent of the legislature to expand subdivision (1)(c) and require defendants to provide notice to the People when they seek to introduce psychiatric evidence in connection with "any other defense" (CPL 250.10[1][c] ). The dissent's narrow interpretation of this catch-all phrase that is designed to be inclusive defeats the principle of fundamental fairness, which was the impetus for the statute.

The dissent's discussion as to CPL 250.10's applicability to suppression hearings (see Wilson dissenting op. at 172-173, 74 N.Y.S.3d at 800-02, 98 N.E.3d at 716-17) involves an issue not before us as the argument was never raised in the trial court. This discussion also confuses the difference between the admissibility of a statement, a decision that may only be determined by the court, with the ability of the jury to determine the voluntariness of the statement at trial (see People v. Hamlin, 71 N.Y.2d 750, 761, 530 N.Y.S.2d 74, 525 N.E.2d 719 [1988] ; CPL 710.70 ). It further ignores that the CPL demands defendants provide pretrial notice of the legal grounds on which the suppression motion is made (CPL 710.60[3][a] ). And lastly, timely notice under CPL 250.10(2), i.e., "not more than thirty days after entry of the plea of not guilty to the indictment[,]" of a defense of mental illness as to the voluntariness of a statement, would provide the People ample opportunity to obtain rebuttal evidence before the pretrial suppression hearing.

Even if the psychiatric evidence at issue here had been erroneously excluded, its preclusion would have been harmless beyond a reasonable doubt as there was overwhelming evidence of guilt and no significant probability that preclusion impacted the verdict (see People v. Crimmins, 36 N.Y.2d 230, 241-242, 367 N.Y.S.2d 213, 326 N.E.2d 787 [1975] ). Officers recovered a loaded weapon on defendant's person after lawfully pulling him over in a car that he was driving without a valid license. Further, defendant spontaneously admitted his possession of the loaded gun when he said he would have shot the officer had he not been apprehended so quickly.